SRD/MJM 202100121

_____FILED   _____ENTERED
_____LODGED   _____RECEIVED

MAR - 4 2021

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **UNDER SEAL** |
| | * | |
| v. | * | **CRIMINAL NO.** GLR-21-054 |
| | * | |
| **MEDARD ULYSSE a/k/a "Jay,"** | * | **(Conspiracy to Commit Mail Fraud,** |
| **EGHOSASERE AVBORAYE-** | * | **18 U.S.C. § 1349; Forfeiture, 18** |
| **IGBINEDION a/k/a "Ego" a/k/a** | * | **U.S.C. § 981(a)(1)(C), 28 U.S.C.** |
| **"Ghost," and** | * | **§ 2461(c))** |
| **AMAYA ENGLISH,** | * | |
| | * | |
| Defendants. | ****** | |

## INDICTMENT

## COUNT ONE
### (Conspiracy to Commit Mail Fraud)

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to this Indictment:

1.      Defendant **MEDARD ULYSSE a/k/a "Jay" ("ULYSSE")** was a resident of Miami, Florida.

2.      Defendant **EGHOSASERE AVBORAYE-IGBINEDION a/k/a "Ego" a/k/a "Ghost" ("AVBORAYE-IGBINEDION")** was a resident of Miramar, Florida.

3.      Defendant **AMAYA ENGLISH ("ENGLISH")** was a resident of Baltimore, Maryland.

### The Conspiracy and Scheme to Defraud

4.      From in or about January 2018 through in or about November 2019, in the District of Maryland and elsewhere, the defendants,

**MEDARD ULYSSE a/k/a "Jay,"**
**EGHOSASERE AVBORAYE-IGBINEDION a/k/a "Ego" a/k/a "Ghost," and**
**AMAYA ENGLISH**

did knowingly and willfully conspire, confederate, and agree with others known and unknown to commit mail fraud, that is to knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property from victims, by means of materially false and fraudulent pretenses, representations, and promises, that is, to persuade elderly victims to send thousands of dollars in cash to members of the conspiracy under false pretenses that:

 a. the money would be used to help the victims' relatives pay legal or other expenses in connection with crimes and other incidents that had not occurred, and

 b. the money would be sent to particular individuals at their addresses, rather than to members of the conspiracy falsely claiming to reside at those addressees

(the "scheme to defraud"), and for the purpose of executing and attempting to execute such scheme to defraud, to knowingly deposit and cause to be deposited to be sent and delivered by the Postal Service and private interstate carrier, and caused to be delivered by mail and private and commercial interstate carrier, any matter and thing, according to the direction thereon, in violation of 18 U.S.C. § 1341.

**Manner and Means**

5. It was part of the conspiracy and scheme to defraud that conspirators telephoned elderly victims throughout the United States and, while posing as a police officer, lawyer, or other individual, falsely told the victim that a relative, typically the victim's grandchild, had been incarcerated in connection with a car accident or traffic stop involving a crime, and needed money for bail and legal fees, often tens of thousands of dollars.

2

6. It was further part of the conspiracy and scheme to defraud that conspirators also posed as the victims' relatives themselves in order to further induce the victims to send the cash.

7. It was further part of the conspiracy and scheme to defraud that conspirators described the situation as extremely serious, sometimes indicating that drugs had been found in the vehicle, or that the occupant of another car was injured.

8. It was further part of the conspiracy and scheme to defraud that, in order to conceal the crime, conspirators told the victims false information, like that there had been a "gag order" placed on the case requiring secrecy, or that the situation was embarrassing for the grandchild, and that the victim should not share the information with others.

9. It was further part of the conspiracy and scheme to defraud that, during the telephone calls, conspirators directed the victims to send cash to a particular address via overnight delivery service, such as United States Postal Service Priority Mail, Fed Ex, and United Parcel Service ("UPS").

10. It was further part of the conspiracy and scheme to defraud that, if the victims sent cash as directed by conspirators, conspirators would call the victims again and ask for more cash, falsely claiming that additional funds were necessary for various purposes, such as their grandchild's legal expenses, bail costs, fines, or to pay damages. Conspirators would continue to call the victims and demand additional funds, regularly obtaining tens of thousands of dollars from the retirement savings of victims.

11. It was further part of the conspiracy and scheme to defraud that, in order to conceal the crime, conspirators identified residential locations across the country where the cash should be sent, including but not limited to addresses in Maryland, Delaware, Pennsylvania, and

3

Florida. Conspirators identified locations that would either be vacant or for sale, so no one would be at those locations at the time of the deliveries.

12. It was further part of the conspiracy and scheme to defraud that conspirators retrieved the packages of cash and distributed the fraud proceeds to other people involved in the scheme.

13. It was further part of the conspiracy and scheme to defraud that conspirators recruited and instructed additional people to assist in retrieving the packages of cash when they were delivered to the specified locations.

14. It was further part of the conspiracy and scheme to defraud that **ULYSSE** recruited other persons in the State of Florida to participate in the scheme with promises of travel and cash payments.

15. It was further part of the conspiracy and scheme to defraud that **ULYSSE** directed other conspirators to travel from Florida to the State of Maryland and other regions of the United States, to identify residential locations where packages of cash could be delivered, to observe deliveries of the packages at designated locations, to retrieve packages of cash from particular locations, and to deliver the packages to **ULYSSE, ENGLISH**, or to other conspirators.

16. It was further part of the conspiracy and scheme to defraud that **ULYSSE** would, at times, instruct other participants in the scheme not to open the packages of cash they retrieved at his direction and, at other times, instruct other conspirators to open the packages, count the cash inside, and send **ULYSSE** video recordings of the packages being opened and counted.

17. It was further part of the conspiracy and scheme to defraud that **AVBORAYE-IGBINEDION, ENGLISH** and other conspirators retrieved packages of cash from locations

4

designated by members of the conspiracy and relayed directions to other participants in the scheme about where and when to retrieve packages of cash.

18. It was further part of the conspiracy and scheme to defraud that **ULYSSE** distributed, and directed other conspirators to distribute, cash payments to other members of the conspiracy for their participation in the scheme.

19. It was further part of the conspiracy and scheme to defraud that **ENGLISH** and other conspirators used the Internet to track packages of cash due for delivery to locations designated by members of the conspiracy, relayed information about the delivery status of the packages to other conspirators, and accepted packages of cash from other conspirators on behalf of **ULYSSE**.

20. It was further part of the conspiracy and scheme to defraud that **ULYSSE**, **AVBORAYE-IGBINEDION**, **ENGLISH**, and other conspirators encouraged and enticed other persons to participate in the scheme.

21. It was further part of the conspiracy and scheme to defraud that members of the conspiracy caused at least 70 different victims to send at least $1.5 million through materially false and fraudulent pretenses, representations, and promises.

### Overt Acts

22. In furtherance of the conspiracy and scheme to defraud, and to effect the objects thereof, the defendants, and others known and unknown to the Grand Jury, committed and caused to be committed the following acts, among others, in the District of Maryland and elsewhere:

a. On or about July 11, 2018, and September 20, 2018, **ENGLISH** sent to other conspirators addresses in Baltimore, Maryland and Washington D.C. where members of

the conspiracy caused victims to ship packages of cash in order for the conspirators to retrieve those packages, which included the following:

| DATE OF DELIVERY | FROM | TO | DESCRIPTION |
|---|---|---|---|
| 7/11/2018 | Murrieta, CA | Baltimore, MD | A Fed Ex shipment containing $8,000 in cash. |
| 9/20/2018 | Missoula, MT | Washington, DC | A Fed Ex shipment containing $8,000 in cash. |

       b.     On or about August 24, 2018, **AVBORAYE-IGBINEDION** and **ENGLISH** traveled to a location in Baltimore, Maryland where members of the conspiracy caused a victim to ship a package containing cash via Fed Ex in order to observe the delivery and retrieve the package.

       c.     On or about January 4, 2019, **ULYSSE** traveled from Florida to Maryland in order to obtain packages of cash that members of the conspiracy caused victims to ship to particular locations in the areas of Baltimore, Maryland and Washington, D.C. between January 8, 2019, and January 12, 2019, which included the following:

| DATE OF DELIVERY | FROM | TO | DESCRIPTION |
|---|---|---|---|
| 1/9/2019 | La Quinta, CA | Baltimore, MD | A Fed Ex shipment containing $9,400 in cash |
| 1/9/2019 | Bainbridge Island, WA | Baltimore, MD | A UPS shipment containing $10,000 in cash |
| 1/12/2019 | Shelby Township, MI | Washington, DC | A Fed Ex shipment containing an unknown quantity of cash |

6

| 1/12/2019 | Groton, CT | Baltimore, MD | A UPS shipment containing $9,800 in cash. |
|---|---|---|---|

d.      On or about January 16, 2019, **AVBORAYE-IGBINEDION** traveled from Florida to Maryland to obtain packages of cash that members of the conspiracy caused victims to ship to particular locations in Baltimore, Maryland between January 17, 2019, and January 19, 2019, which included the following

| DATE OF DELIVERY | FROM | TO | DESCRIPTION |
|---|---|---|---|
| 1/17/2019 | Rochester, NY | Baltimore, MD | A Fed Ex shipment containing $7,200 in cash |
| 1/18/2019 | Lindon, UT | Baltimore, MD | A Fed Ex shipment containing $8,000 in cash |
| 1/19/2019 | Colonial Heights, VA | Baltimore, MD | A Fed Ex shipment containing $10,000 in cash |

e.      On or about August 10, 2019, **ENGLISH** traveled to a location in Glenolden, Pennsylvania where members of the conspiracy caused a victim to ship a package containing $6,800 in cash via UPS and retrieved the package.

18 U.S.C. § 1349.

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.     Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), in the event of the defendants' conviction under Count One of the Indictment.

### Mail Fraud Forfeiture

2.     Upon conviction of the offense set forth in Count One, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the defendants,

**MEDARD ULYSSE,**
**EGHOSASERE AVBORAYE-IGBINEDION, and**
**AMAYA ENGLISH**

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud, including, but not limited to: a money judgment for each defendant representing the proceeds he obtained from his participation in the scheme to defraud.

### Substitute Assets

3.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

   a.   cannot be located upon the exercise of due diligence

   b.   has been transferred, sold to, or deposited with a third party

   c.   has been placed beyond the jurisdiction of the court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be divided without

difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the

forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 28

U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Jonathan F. Lenzner
Acting United States Attorney

**SIGNATURE REDACTED**

Foreperson
Date:   3/4/2021

9