IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DISTRICT

- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA      :
                              :
     v.                       :     Criminal No. 21-CR-00054
                              :
MEDARD ULYSSE,                :
                              :
        Defendant.            :     Baltimore, Maryland
                              :
- - - - - - - - - - - - - - - x     March 26, 2021


**VIRTUAL INITIAL APPEARANCE HEARING**


     BEFORE:   THE HONORABLE A. DAVID COPPERTHITE, Judge

APPEARANCES:                        MATTHEW MADDOX, ESQ.
                                    Office of the U.S. Attorney
                                    36 S. Charles Street, Suite 400
                                    Baltimore, Maryland  21201
                                      On Behalf of the Government

                                    RICHARD BARDOS, ESQ.
                                    Shulman, Hershfield, and Gilden,
                                    PA
                                    1 East Pratt Street, Suite 904
                                    Baltimore, Maryland  21202
                                      On Behalf of the Defendant

Audio Operator:                     Lamar Purnell

Transcription Company:              CompuScribe
                                    P.O. Box 789
                                    Cheltenham, Maryland  20706-9998




Proceeding recorded by electronic sound recording,
transcript produced by transcription service.

**I N D E X**

|  | Page |
|---|---|
| Preliminary Matters | 3 |
| Court and Defendant Re: Advice of Rights | 4 |
| Ruling by Judge A. David Copperthite | 12 |

KEYNOTE:   "---" Indicates inaudible in transcript.
           "*" Indicates phonetic spelling in transcript.

bek                                                                      3

P R O C E E D I N G S

(Whereupon, at 4:15 p.m., the hearing began.)

THE CLERK:  This Honorable Court now resumes in session.  The Honorable A. David Copperthite presiding.

THE COURT:  Good afternoon, everyone.

MR. BARDOS:  Afternoon, Your Honor.

MR. MADDOX:  Afternoon, Your Honor.

THE COURT:  May I ask you to call the case, please?

MR. MADDOX:  Yes, Your Honor.  Calling the case of United States of America versus Medard Ulysse, AKA "J".  This is Criminal Case Number GLR-21-054.  I am Assistant U.S. Matthew Maddox, on behalf of the Government.  Your Honor, we are here for an initial appearance.

THE COURT:  Thank you.

Mr. Bardos?

MR. BARDOS:  Good afternoon, Your Honor.  Richard Bardos.  I have been asked to be here on behalf of Mr. Ulysse.

THE COURT:  Good afternoon, Mr. Ulysse.

THE DEFENDANT:  Good afternoon, sir.

THE COURT:  Mr. Ulysse, can you hear me okay?

THE DEFENDANT:  Yes, I can.  Should I stand up or --- --

THE COURT:  No, you are fine.  You can stay seated. That is all right.

THE DEFENDANT:  Okay --

THE COURT:  If you have a problem hearing me, just raise your hand so I can see you.  Okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Because normally, Mr. Ulysse, we would be in a courtroom where we would conduct this, you would be sitting next to your lawyer, and that would be the normal procedure.  But we can't do that because there is a pandemic.  But I just want to make sure you agree to proceed this way --- --

THE DEFENDANT:  Yes, I do, sir.

THE COURT:  Okay.  All right.  Okay.  You are charged with one count of mail fraud -- conspiracy to commit mail fraud, in violation of 18 U.S.C., Section 1429.  That particular offense carries a maximum penalty of 20 years incarceration to the Bureau of Prisons, a $250,000 -- excuse me -- and up to 5 years of supervised release.  Do you understand the nature of the charges and the maximum penalties you could face if you were convicted of those charges?

THE DEFENDANT:  Yes, I do.

THE COURT:  Okay.  Now, Mr. Ulysse, you also have two very important constitutional rights.  First is the right to remain silent.  You do not have to speak to anyone from the Government about these charges, and anything you do say

bek                                                                5

can be used against you in court.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  The second right you have,
very important right, is the right to counsel, the right to
an attorney.  And it is my understanding you completed a
financial affidavit --- about your income and so forth?

THE DEFENDANT:  Yes, ---.

THE COURT:  Is that information true and correct,
Mr. Ulysse?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Based on that, I am going to appoint
counsel for you.  I am going to appointment Mr. Bardos to
represent you.  Mr. Bardos is a private attorney.  He is a
member of what is called the Criminal Justice Panel.  These
are lawyers who are especially qualified to practice criminal
law, here in United States District Court. Mr. Bardos is a
member of that panel.  So, I will appoint him to represent
you in this matter.

One other thing I need to cover is a warning I need
to read to the Government, and it is required by law Rule
5(f).  The United States is ordered to produce all
exculpatory evidence to the Defendant pursuant to Brady
versus Maryland, and its progeny.

Not doing so in a timely manner may result in
sanctions including the exclusion of evidence, adverse jury

bek                                                                6

instructions, dismissal of charges, contempt proceedings,

vacating a conviction, and disciplinary action toward the

prosecution.

So, where is the Government, in terms of ---

Mr. Maddox?

MR. BARDOS:  Oh, just one note, Your Honor.  I just

wanted to know of a potential correction.  In Your Honor's

review of the maximum penalties that attend to the charge in

the indictment, I believe you said it was a maximum of 5

years of supervised release.  I believe that the maximum is 3

years supervised release.

THE COURT:  No, I thought so, too, but I think the

--- is incorrect.  It said 5 --

MR. BARDOS:  ---.  Okay.

THE COURT:  So --

MR. BARDOS:  It's 5.  That is my office computer.

I apologize for that.

THE COURT:  All right.  So, that corrects the

amount.  If you were convicted, Mr. Ulysse, you would only be

subject to 3 years of supervised release.  I ---.

(Simultaneous discussion.)

THE COURT:  Now, as to release of detention.

MR. MADDOX:  The Government agrees with the

determination of Pre-trial Services and would request

detention in this matter based on risk of flight and danger

to the community.

THE COURT:  Okay.  One question I have for Mr. Maddox.  I am going to look at this ---.  Does the statute you to seek detention based on danger to the community when --- and mail fraud offense?

MR. MADDOX:  I believe so, Your Honor, but I could be mistaken.

(Pause)

THE DEFENDANT:  Am I allowed to speak?

THE COURT:  It is probably not a good idea for you to speak yet.  You need to talk to your --- --

THE DEFENDANT:  Okay.

THE COURT:  That is just --- at this minute.

(Pause)

THE COURT:  In this case, I think it would be based on the fact that he has been convicted of --- offenses described in Paragraphs A through C.  That includes drug offense --- offenses.  Let me see.  I am looking at Section 3142 subsection (f)(2).  It says (reading):

> "The judicial officer shall hold a hearing
> to determine whether any condition or
> combination of conditions set forth in
> subsection (c) of this section (c) if this
> section will reasonably assure the appearance
> of such person as required and the safety of

any other person in the community upon motion of the attorney for the Government in any case that involves the serious risk that such person will flee or serious risk that such person will obstruct or attempt to obstruct justice or threaten to injure or intimidate or attempt to threaten, injure, and intimidate prospective witness ---."

So, are you seeking on flight, Mr. Maddox?

MR. MADDOX:  I am seeking on flight at this point, Your Honor, but I will reserve the right to raise additional factors that could be considered by the Court in ---.

THE COURT:  One other issue is under subsection (C) above that, capital C, a felony of the --- offense charged in (a)(2)(c).  And don't know that we have any felony drug offenses ---.

MR. MADDOX:  Right.  I will --

THE COURT:  I think it is only available to seek detention if ---, unless you tell me otherwise.

THE DEFENDANT:  Okay.  I ---.  I presented myself willingly today.  I brought myself here.

THE COURT:  Okay.

THE DEFENDANT:  I ---.

THE COURT:  We are not holding an actual hearing on that, Mr. Ulysse.  It is whether or you are -- whether the

Government is entitled to even seek detention.  That is the question.

Mr. Bardos, --- weigh in on this?  I am looking at 3142 and I -- this doesn't come up often, but does normally --- around detention.

MR. BARDOS:  I think you are correct, Your Honor, that flight is the issue.  I am a little surprised that a man who came up here from Georgia, voluntarily, and turned himself in the Government believes to be a risk of flight when I think that is pretty good evidence he is not.  But I think you are entitled to a hearing, and that is the way the statute reads.

THE COURT:  Okay.  So, need to schedule a hearing, but I -- you think the issue is a risk to flight.

Mr. Purnell, what is the first available hearing date we have for ---?

THE CLERK:  ---.

THE COURT:  Monday?  Monday at 9:30.

MR. MADDOX:  Your Honor, I am not available Monday, at all.  As much as I would like to get to the hearing I can't do it on Monday.  I am sorry.

THE CLERK:  ---.

THE COURT:  So, are we reserving --- for Mr. ---.  Why don't we set it in for Wednesday afternoon?

MR.          :  One second.

bek                                                                    10

THE COURT:  What is the easiest time they can ---

in the afternoon on Wednesday?  3:30?  That may be a problem

with initial appearances, but --

THE CLERK:  --- 2 o'clock ---.

THE COURT:  And that is Wednesday.  That is the

---?  All right, we will set it in for that.  All right.  Is

there anything further?

Oh, Mr. Bardos.  Excuse me.  Sorry, I have been

doing ---.  Mr. Bardos, are there any medical issues that we

need to address?

MR. BARDOS:  I don't believe so, Your Honor.  Not

according to the Pre-trial report.

THE COURT:  Okay.  And Mr. Ulysse, --- --

THE DEFENDANT:  One second.  Pardon me?

THE COURT:  I am sorry.  Mr. Ulysse came to

Maryland and turned himself in.

MR. BARDOS:  Yes, sir.

THE DEFENDANT:  I came all the way from Georgia to

turn myself in, with no problem.  No problem.  I came all the

way over here.

THE COURT:  --- --

THE DEFENDANT:  --- I find out what was going on,

my lawyer -- I got to talk to my lawyer.  My lawyer was

contacting Mr. Maddox, and I came straight over here and I

turned myself in, no problem.  I have no reason to run.  I

understand, I respect the law, and I came directly over here.
Cooperate 100 percent.

THE COURT:  Okay.

THE DEFENDANT:  My --

THE COURT:  Mr. --

THE DEFENDANT:  -- baby's mother and my son
was --- --

THE COURT:  Mr. Ulysse, I am sorry.  It probably
not a good idea for you to talk.  Do it on the record.  Okay?
So, I am not -- as much as I would like to hear what you have
to say, I think it would be great to talk to your lawyer.

MR. MADDOX:  Your Honor, if I could just respond to
the point that Mr. Bardos raised.  The Defendant has been
aware of his arrest warrant since last -- well, since
Wednesday.  He was advised to turn himself in immediately in
the jurisdiction that he was in, which was the Northern
District of Georgia.  My understanding, from his attorney,
was that he essentially refused to do that.

So, he elected and he chose the time that he would
turn himself in, and that was this morning at 9 a.m.  And my
understanding is he arrived a little bit late, he -- about an
hour late this morning.  So, I just wanted to make sure that
the record was clear on that.

THE DEFENDANT:  No, I wasn't in the Northern
District of Georgia.  When my lawyer spoke to Mr. Maddox and

---, they said that it would be better to go back.  I had a warrant in Maryland, to go directly to Maryland to turn yourself in.  And he spoke to Mr. Maddox on a Wednesday, and on -- since Wednesday, he knew that I was coming on Friday to turn myself in, which is what I did.  I came on Friday, turned myself in this morning.

THE COURT:  All right.  We can just -- --- --

MR. MADDOX:  Just to be clear, to lawyer to which both Mr. -- to which Mr. Ulysse is referring is not me --

(Simultaneous discussion.)

THE COURT:  I think that -- I am sure there was somebody where he was at the time --

MR. MADDOX:  Yes, sir.

THE COURT:  Mr. Bardos, give me just a minute ---. --- says.

(Pause)

THE COURT:  Unfortunately, based on this, I don't think I have very much latitude here.  So, looks like this is in for a hearing for Wednesday, 3 p.m.  And I will enter a temporary order of detention until then, and maybe by then, certainly, Mr. Ulysse can provide you with all the information he needs.

MR. BARDOS:  Yes, yes.

THE COURT:  Okay.  All right?  Anything further that -- any medical issues we need to address?

bek                                                                              13

MR. BARDOS:  No, Your Honor.  I would just ask you, is it possible, Mr. Purnell, that I can have a breakout room with Mr. Ulysse for a couple minutes after the hearing?  Thank you.

THE COURT:  All right.  Then, if there is nothing further we will stand in recess.

THE CLERK:  ---.

(Whereupon, at 4:30 p.m., the hearing concluded.)

bek                                                                      14

## C E R T I F I C A T E

I certify that the foregoing is correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*Brenda E. Khan*    01-20-22
_____
Brenda Khan                    Date