```
1                    IN THE UNITED STATES DISTRICT COURT
                           DISTRICT OF MARYLAND
2                            NORTHERN DIVISION

3    UNITED STATES OF AMERICA,        )
                                      )
4              Plaintiff,             )
          vs.                         )
5                                     )  CRIMINAL NO.: 21-0054-RDB
     MEDARD ULYSSE,                   )
6                                     )
               Defendant.             )
7    _____)

8
                         Transcript of Proceedings
9              Before the Honorable Richard D. Bennett
                       Friday, September 23rd, 2022
10                         Baltimore, Maryland

11

12   Appearances:

13   For the Plaintiff:

14        Sean Delaney, AUSA
          Evelyn Cusson, AUSA
15        Office of the United States Attorney
          36 S. Charles Street, Fourth Floor
16        Baltimore, Maryland 21201

17   For the Defendant:

18        Richard Bardos, Esquire
          Schulman, Hershfield and Gilden PA
19        1 E. Pratt Street, Suite 904
          Baltimore, Maryland 21202

20

21   Also Present:  Special Agent Jason Bender, FBI
                    Special Agent Adam Martin, DOL/OIG
22

23   Court Reporter:  Christine T. Asif, RPR, FCRR

24

25
```

1    (2:58 p.m.)

2                    P R O C E E D I N G S

3         THE COURT:  Good afternoon, everyone.  This is

4    calling the case of United States versus Medard Ulysse,

5    criminal number RDB-22 -- I'm sorry 21-054.  And we have a

6    second case that's been filed now as of today, which is

7    22-0335.  And we have a shopping list of things to attend to,

8    as well as going over some procedural postures here.  And I

9    understand that there may or may not be a guilty plea entered

10   here.  And I will determine whether or not I will accept the

11   guilty plea.  And we'll also be going over conditions of

12   release, because there's been a lot of confusion over this

13   case over the last few days.  And we're going to straighten

14   this case out a little bit.

15         So with that I would note that the masking policies

16   of this court require that masks be worn in all public areas

17   of the courthouse with the exception of the courtrooms, we're

18   under the discretion of the presiding judge masks may be

19   pulled down if those who have been fully vaccinated.  I'm here

20   on the bench with my mask pulled down I have been fully

21   vaccinate and boosted, in fact, received my second booster

22   yesterday.  And I am behind a wall of plexiglass, so I will

23   not be wearing a mask.  I will inquire of the vaccination

24   status of the participants here today.  And you don't have to

25   pull your mask down, but you may if you're addressing the

1    court, it's easier for Ms. Asif the court reporter, along with

2    keeping pace with a quick moving judge up here to also have to

3    interpret what people are saying behind masks.

4            So with that if counsel would identified themselves

5    for the record, please.

6            MR. DELANEY:  Good afternoon, Your Honor.  Sean

7    Delaney on behalf of the United States, I am fully vaccinated

8    and boosted.

9            THE COURT:  Yes, Mr. Delaney, nice to see you.

10           MR. DELANEY:  And with me at counsel table is the

11   newest member of the public corruption section, AUSA Evelyn

12   Cusson.

13           THE COURT:  Yes, Ms. Cusson, nice to see you.  Well,

14   she's been with the U.S. Attorney's Office for a while.

15           MS. CUSSON:  I have.

16           THE COURT:  But now you're in the fraud section.  So

17   it's nice to see you Ms. Cusson.  Welcome.

18           MS. CUSSON:  Thank you.

19           THE COURT:  Hold on one second here.  And Ms. Cusson

20   will be trying the case with you when the case proceeds to

21   trial, certainly as to any other defendants?

22           MR. DELANEY:  If not Ms. Cusson then AUSA Goo.

23           THE COURT:  I'm sorry?

24           MR. DELANEY:  If not Ms. Cusson then AUSA Christine

25   Goo will be.

1          THE COURT:  Okay.  That's fine.  So with that you

2    all may be seated.  We have with us Jason Bender and Adam

3    Martin, and they are from what agency, I'm sorry?  I don't see

4    what agency they're from.

5          MR. DELANEY:  Thank you, Your Honor, Special Agent

6    Jason Bender with the Federal Bureau of Investigation, and

7    Special Agent Adam Martin with the Department of Labor, Office

8    of Inspector General.

9          THE COURT:  Nice to have both of you here.  Welcome.

10   Welcome to both of you.  And I don't know that they'll be

11   speaking, but have both of you gentlemen been fully

12   vaccinated?

13          MR. BENDER:  I have Your Honor.

14          MR. MARTIN:  Yes Your Honor.

15          THE COURT:  Nice to have you here.  Nice to have you

16   here.  And on behalf of the defendant.

17          MR. BARDOS:  Yes.  Good afternoon, Your Honor.

18   Richard Bardos representing Medard Ulysse who is present to my

19   right.

20          THE COURT:  Yes, Mr. Bardos, nice to see you.  And

21   you are court-appointed; correct?

22          MR. BARDOS:  Yes, sir.

23          THE COURT:  Thank you for taking this appointment.

24          And good afternoon to you, Mr. Ulysse.

25          THE DEFENDANT:  Good afternoon.

1          THE COURT:  Sir, are you been fully vaccinated?

2          THE DEFENDANT:  I am.

3          THE COURT:  All right.  You don't need to pull your

4     mask down while speaking, but you can if you want to.  You

5     don't have to.  Let me just make a note here.  The U.S.

6     probation officer assigned to this case, I don't know if a

7     U.S. probation officer is here or not.  Who is the U.S.

8     probation officer assigned to this case?

9          MR. BARDOS:  I believe it's Nicole Wonneman, she

10    advises she was not able to be here today.

11         THE COURT:  All right.  Well, that's understandable,

12    we have -- we had scheduled this matter -- docket sheet.  I

13    had the docket sheet up here, I don't know where it is.  Thank

14    you very much Ms. Tyson.  We had scheduled this matter

15    previously for a guilty plea earlier in the week, I believe.

16    And then I received word that the defendant had first we --

17    just so the procedural history is correct, Mr. Bardos, if I'm

18    incorrect correct me.  The matter was scheduled for

19    re-arraignment.  And then I was notified Mr. Ulysse was not

20    able to afford to return here and we went through the process

21    of setting up a Zoom re-arraignment and got his consent to

22    proceed by Zoom.  And indeed, that was paper No. 122 that was

23    filed on September the 19th, Monday of this week.

24         And then I was notified that he was not going to

25    plead guilty by Zoom or any other means.  So then he indicated

1    he wanted another attorney, was going to retain another

2    attorney.  I didn't understand how he couldn't afford to come

3    here to Baltimore but represent to the Court he was going to

4    retain a attorney.  So finally the record will reflect that I

5    ordered that he physically be here in this courthouse at 2:30

6    today -- we're starting late -- at 2:30, where he was to

7    appear in front of Magistrate Judge Copperthite for an

8    attorney inquiry.  And then I was advised in the interim that

9    he was going to appear here in this courtroom at 2:30 and not

10   before Judge Copperthite because he was going to enter a plea

11   of guilty have.  So have I correctly summarized the procedural

12   posture up to this point?

13           MR. BARDOS:  Yes, sir.

14           THE COURT:  All right.  Mr. Ulysse I'm going to go

15   over it carefully here, because I'm going to go over this case

16   A to Z, your conditions of release, and this case is coming to

17   trial and I'm a little mystified by the procedural history

18   here.  So we'll see if I accept a guilty plea, and we'll see

19   what the conditions of release are, and exactly how we're

20   going to move forward on this case do you understand that.

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  And I'm going to place you under oath

23   and if you lie or make any misrepresentations to me totally

24   separate from the charges in this case you can be prosecuted

25   for perjury or lying, do you understand that?

1          THE DEFENDANT:  Yes, I do, Your Honor.

2          THE COURT:  All right.  So with that let me just go

3     over the procedural posture, I think where we are, but I'm

4     just not sure.  First of all, we have a second charge that's

5     being filed here.  As of an hour ago having been filed.  And

6     we have a criminal information that my assistant literally

7     took down to the clerk's office a few minutes ago that charges

8     the defendant with an additional crime, which is referenced in

9     the plea agreement letter, which I'm assuming is still

10    operative, it may or may not be, and we'll have to determine

11    that in a minute here.

12          The plea agreement letter, if the plea goes forward

13    today, references not only Count 1 of the current indictment

14    in criminal number RDB-21-0054, but also a separate criminal

15    information, which has been referenced in a letter of July 22.

16    And although there's a reference to the criminal information

17    on July 22, that criminal information has now just been filed

18    within the last half hour here on September the 23rd.  You

19    have a right to a determination of probable cause as to any

20    charge against you, Mr. Ulysse.  Am I pronouncing your name

21    correctly, sir?

22          THE DEFENDANT:  Ulysse, yes, sir.

23          THE COURT:  You have a right to a determination of

24    probable cause, meaning the government can not just charge you

25    with a crime without a determination of probable cause, either

1    by way of a grand jury indictment, as was the case in the

2    indictment in chief here, where members of the community some

3    23 people determine whether or not there's probable cause to

4    believe that you committed an offense, or by way of a

5    preliminary hearing.

6            And it's my understanding that we're proceeding as

7    to the second charge by criminal information.  And it is a

8    one-count criminal information charging you with essentially

9    wire fraud in connection with unemployment insurance.  And it

10   has been filed now as paper No. 1 in case No. 22-0335.  Have

11   you seen this criminal information Mr. Bardos.

12           MR. BARDOS:  Yes, sir.

13           THE COURT:  Okay.  Have you read -- have you gone

14   over it with him.

15           MR. BARDOS:  Yes, sir.

16           THE COURT:  Let me go over what the charges are with

17   you, Mr. Ulysse.  I think in light of the posture of this case

18   we're going to read it verbatim.  I'm going to read the entire

19   matter to you, to make sure you understand there's no

20   confusion about it, okay?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  It charges that you were a resident of

23   Miami, Florida.  That the unemployment insurance with respect

24   to the state of Maryland was a joint state and federal program

25   that provided monetary benefits to eligible beneficiaries.

1    And the unemployment insurance payments were intended to

2    provide temporary financial assistance to lawful workers who

3    were unemployed through no fault of their own.  And it is

4    charged that beginning in or around March of 2020, in response

5    to the COVID-19 pandemic, several federal programs expanded

6    the unemployment insurance eligibility and increased

7    unemployment insurance benefits, including the Pandemic

8    Unemployment Assistance Program and the Federal Pandemic

9    Unemployed Compensation and Lost Wages Assistance Program.

10           In Maryland a former employee of a business who has

11    lost his or her job can contact the Maryland Department of

12    Labor and submit a claim for unemployment insurance.  And

13    claims for unemployment insurance benefits are commonly

14    submitted electronically through the use of the internet and

15    internet capable computers or other electronic devices.  If

16    the former employee meets certain requirements, including

17    having received sufficient wages prior to separation they

18    become eligible to receive unemployment insurance benefits.

19           Prior to April of 2021, if the Maryland Department

20    of Labor approved an unemployment insurance claim, Bank of

21    America pursuant to a contract with the Maryland Department of

22    Labor, would create and mail -- could create and mail a Bank

23    of America prepaid Visa debit card with the claimant's name on

24    it.  The claimant based on the -- to the claimant based upon

25    information received from the Maryland Department of Labor.

1    And the Maryland Department of Labor would subsequently

2    authorize the electronic application of uninsurance benefits

3    to the debit card and continue to do so on a periodic basis if

4    the claimant continued to apply for benefits.

5         Now the scheme that's charged here -- and I've

6    essentially gone verbatim thus far.  The scheme that is

7    charged here is that from July 2020, through November 2020,

8    here in the district of Maryland and elsewhere, that you

9    Mr. Ulysse, Medard Ulysse, devised and executed a scheme to

10   obtain unemployment benefits and other property by means of

11   false and fraudulent pretenses, representations, and promises.

12   And it is alleged that you obtained and attempted to obtain

13   money, merchandise, and other property by submitting false

14   applications in the names of identity theft victims claiming

15   unemployment benefits to which you and others were not

16   entitled.

17        And it is alleged that you, submitted these

18   fraudulent claims for unemployment benefits through the

19   internet to the Maryland Department of Labor, the California

20   Employment Development Department, and other state work force

21   agencies.  These fraudulent applications listed individual

22   victims' names, Social Security numbers, and dates of birth.

23   And the Maryland Department of Labor and other state work

24   force agencies disbursed benefits through debit cards issued

25   in the names of applicants and mailed to addresses provided in

1    the applications.

2           It is further alleged that by completing and

3    submitting these false applications for benefits in the names

4    of identity theft victims, that you caused the issuance of

5    debit cards in the victim's names and the mailing of those

6    cards to locations in Maryland and elsewhere, which were

7    accessible to you and others.

8           And it is further charged, it was part of the scheme

9    to defraud that between July 2020 and November of 2020, in the

10   District of Maryland and elsewhere, that you Mr. Ulysse,

11   conducted fraudulent transactions through use of debit cards

12   issued in the names of at least six identity theft victims,

13   and funded with unemployment compensation, including Federal

14   Pandemic Unemployment Compensation and Lost Wages Assistance

15   Program compensation -- just look here -- or actually Pandemic

16   un -- Assistance Program is charged there.  Each debit card

17   displayed a victim's name.

18          The unemployment benefits were disbursed by the

19   Maryland Department of Labor and other state workforce

20   agencies as a result of fraudulent claims made in the victim's

21   names by you, Mr. Ulysse, and others.  And it's alleged that

22   you were aware that the real person's identities were being

23   used to file the fraudulent unemployment claims and that the

24   debit cards were used in the names of real persons.

25          You're charged in a one-count criminal information

1    with wire fraud, in paragraphs 1 through 7 that I've just read

2    of this information, I'll incorporated it by reference therein

3    to paragraph 8, and it is specifically charged that on or

4    about September 26, 2020, that you, for the purpose of

5    executing and attempting to execute the scheme to defraud the

6    Maryland Department of -- well, it says Maryland DLLR,

7    Maryland Department of Labor and Licensing Regulation.  Right?

8    I don't see that there's a reference to it earlier in the

9    criminal information.

10             MR. DELANEY:  Your Honor, I think that's an error.

11   I think that should be Maryland Department of Labor, the DLLR

12   was the predecessor name.

13             THE COURT:  I will amend that here.  We'll have to

14   make sure he initials this.

15             MR. DELANEY:  Thank you, Your Honor.

16             THE COURT:  So it should be the Maryland Department

17   of Labor, of money by means of materially false and fraudulent

18   pretenses, representations, and promises as set forth above,

19   and that you did knowingly transmit and cause to be

20   transmitted in interstate commerce by means of wire

21   communications, certain writing, signs, signals, and sounds,

22   namely an ATM withdrawal from a Bank of America account

23   located in Baltimore, Maryland, in order to fraudulently

24   obtain funds using a Visa prepaid debit card in the name of an

25   individual initials A.C.

```
1              And then there's a forfeiture allegation with
2    respect to upon a conviction in this matter that the defendant
3    shall forfeit any property, real or personal, which
4    constitutes or is derived from proceeds traceable.  And
5    there's an agreement as to the forfeiture aspect as well.
6    Mr.  -- one second here.  Mr. Delaney, if you'll come forward
7    here and initial this for Mr. Barron, the U.S. Attorney, and
8    then I want Mr. Ulysse to initial it.  And I want Mr. Ulysse
9    to initial it as well.
10              MR. DELANEY:  Thank you, Your Honor.
11              THE COURT:  The record will reflect that Mr. Bardos
12   has initialed, and he has not yet been appointed in this case,
13   but I'm about to do so.
14              All right.  Thank you Mr. Delaney.
15              MR. DELANEY:  Thank you, Your Honor.
16              THE COURT:  Do you understand the nature of these
17   charges, Mr. Ulysse?
18              THE DEFENDANT:  Yes, sir, I do.
19              THE COURT:  Do you understand that I've also gt a
20   waiver of indictment form here in which you have waived your
21   right to have these charges be by prosecution of grand jury
22   indictment and consent that this case can proceed against you
23   by information; is that correct?
24              THE DEFENDANT:  Yes, sir, it is.
25              THE COURT:  Now, Mr. Bardos is here, he's been court
```

1   appointed to represent you in the underlying indictment, which

2   is case number 21-0054.  And I'm going to appoint Mr. Bardos

3   here from our Criminal Justice Act panel to represent you on

4   this matter as well.

5           And, Ms. Tyson, if you'll proceed with all the

6   paperwork on that, whatever's necessary.

7           I find it's a knowing waiver here.  Are you under

8   the influence of any drugs or alcoholic beverage or any

9   medication of any kind, Mr. Ulysse?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Anything further on this point from the

12  point of view of the government, Mr. Delaney?

13          MR. DELANEY:  No, Your Honor.  I would just ask the

14  question if Your Honor knows, are we required to conduct an

15  arraignment in this situation with the information --

16          THE COURT:  I don't think so because this is an

17  arraignment, and he's apparently going to plead guilty on a

18  re-arraignment to the indictment and arraignment to the

19  information.

20          MR. DELANEY:  Thank you so much, Your Honor.

21          THE COURT:  Thank you so much, Mr. Delaney.

22          So with that, Ms. Tyson, if you'll take the waiver

23  of indictment form and that will be filed.

24          THE CLERK:  Thank you.

25          THE COURT:  I'll keep the indictment up here.  The

1   criminal information up here.

2         Now, I would note that with respect to the original

3   charge, that you -- paragraph 11 of the plea agreement letter

4   of some two months ago reflected you reached an agreement with

5   the government as to the appropriate sentence here.  And I

6   gather counsel, this is the total sentence as to both cases;

7   is that right, Mr. Delaney.

8         MR. DELANEY:  That is correct.

9         THE COURT:  Correct, Mr. Bardos.

10        MR. BARDOS:  Yes, sir.

11        THE COURT:  All right.  And paragraph 11 of the plea

12  agreement letter, which will be introduced as Government

13  Exhibit 1 if this guilty plea concludes, and if I accept your

14  plea of guilty, and if you do not go to trial, because the

15  trial will not be postponed.  This trial is scheduled for end

16  of October.  And if I don't accept a guilty plea here today,

17  you will go to trial at the end of October, sir.

18        So paragraph 11 specifically references that you've

19  reached an agreement with the government as to the appropriate

20  sentence in this case, which is 48 months incarceration, which

21  is four years incarceration.  That's under Rule 11(c)(1)(C) of

22  the Federal Rules of Criminal Procedure.  That means, Mr.

23  Ulysse, if I were inclined to sentence you to one day more

24  than a total of 48 months on these two charges, you could

25  withdraw your plea of guilty, do you understand that?

1          Yes, Mr. Delaney?

2          MR. DELANEY:  Your Honor, I'm sorry, a correction.

3    The (C) plea calls for a range beginning at 48 months and

4    going all the way to the low end of the guidelines, which will

5    be significantly higher.

6          THE COURT:  I'm sorry, I didn't see that, maybe

7    because we don't have any agreement as to what the low end of

8    the resulting guideline range is.

9          MR. DELANEY:  Correct, Your Honor.  The anticipated

10   offense level is either 27, 28 or 29 when both charges are

11   considered.  And Mr. Ulysse could have a criminal history that

12   is, and we'll figure out what probation says, it could be as

13   high as criminal history V, which means we could have a

14   substantially higher sentence than 48 months.

15         THE COURT:  Really the thrust of this is it's only a

16   (C) plea as to the minimum.

17         MR. DELANEY:  Well, and the government is bound not

18   to request higher than the low end of the guidelines range as

19   the Court finds it.

20         THE COURT:  All right.  So this is really not in my

21   opinion really within the total parameters of a Rule

22   11(c)(1)(C) plea.  It's referenced in paragraph 11, but I've

23   not seen this before.  So there are all kind of issues in

24   terms of what the top end might be.  So there's no definition

25   to it.  So as far as I'm concerned Mr. Delaney, all this means

1     is that the agreement is he can't be sentenced to less than 48

2     months.  And I can't conjecture what the top end is going to

3     be, because there's no definite calculation to what the total

4     offense level is, there's no definite calculation what the

5     criminal history is, and there's no top level of any kind at

6     all.  So this (C) plea should be appropriately referenced -- I

7     see the wording here, but the wording basically means this in

8     simple English:  In simple English it means there's an

9     agreement that your sentence will not be below 48 months, do

10    you understand that.

11              THE DEFENDANT:  Yes, sir, I do.

12              THE COURT:  That means the government may argue for

13    a sentence well above 48 months and Mr. Bardos can argue for

14    any sentence down to 48 months.  Is that a fair summary, Mr.

15    Bardos?

16              MR. BARDOS:  Yes, sir.  I understand the Court's

17    concern.  There is no final answer, but there is a calculation

18    in the plea agreement for how we get to the final answer.  So

19    the Court will determine whether it's 27, 28 or 29, probation

20    will determine what his Criminal History Category is.  That --

21              THE COURT:  Well, no, no, the Court will

22    determine --

23              MR. BARDOS:  I'm sorry.

24              THE COURT:  -- what the criminal history.

25              MR. BARDOS:  Yes, initially probation will, Your

1    Honor's going to decide.  And that will give us a guideline

2    range.  The agreement is that the government will recommend

3    the low end of whatever that guideline range is.  Now, the

4    Court, obviously, is not bound by either the guidelines or the

5    government's recommendation.  So there -- I understand that.

6    And that would be true in any (c)(1)(C) range.  But here, from

7    our point of view, there is some calculation that can give us

8    some idea of what the government's going to recommend.

9            THE COURT:  I understand.

10           MR. BARDOS:  That's really --

11           THE COURT:  As it relates to Mr. Ulysse, it's very

12   simple, Mr. Bardos, so he can understand it.  So if I don't

13   think he understands it I'm not going to accept the guilty

14   plea.  And then we're going to -- and I'm going the make sure

15   he stays right where he is and we're going to have a trial and

16   we're going to go right through it.  In terms of simple

17   English, not legalese, the (C) plea only means that he

18   understands under no circumstances would this sentence be less

19   than four years.

20           MR. BARDOS:  That's correct.

21           THE COURT:  As to all these other factors and total

22   offense levels and what the Court -- what the probation office

23   does and what the Court determines and criminal history.  And

24   Mr. Delaney has said the Criminal History Category may up as

25   high as V.  I don't know.  There is simply no way to calculate

1   what the top end would be.  So in terms of simple language,

2   under Rule 11(c)(1)(C), Rule 11(c)(1)(C) only has

3   applicability to the extent that with this guilty plea if I

4   accept it, under no circumstances can I sentence you to less

5   than 48 months.  And if I were inclined to do so, the

6   government could withdraw from the plea agreement.

7           Do you understand that, Mr. Ulysse?

8           THE DEFENDANT:  Yes, I do, sir.

9           THE COURT:  All right.  I don't think I can make it

10  any more clear then that.  That's all the agreement is.  I

11  have no idea -- If I have no idea what the government's

12  position is going to be, neither do you.  And the government

13  may argue for the top end of the guidelines, and the

14  government may argue for a different Criminal History

15  Category, and that's determined by me, not by the probation

16  office, on the rulings I make.  And I have no idea what the

17  government's going to do in terms of how high they're going to

18  go or recommend, or what the top margin would be.  But I can

19  explain to you that under no circumstances would the sentence

20  be less than 48 months.

21          Do you understand that?

22          THE DEFENDANT:  Yes, I do, sir.

23          THE COURT:  And Mr. Delaney, I probably need to make

24  sure in light of the nature of the original -- the original

25  fraud in the indictment related to notifying elderly victims

1    that members of their family were -- had been arrested and

2    they needed bail money, and have all those victims been

3    notified of these proceedings here as to Mr. Ulysse as well as

4    the trial date coming up as to the other two defendants?

5              MR. DELANEY:  We have been in touch with victims,

6    victims have been notified.  It is my understanding that

7    through the notification system they've been notified of all

8    relevant events that I can --

9              THE COURT:  Ms. Forcina or others have been in

10   charge of notifying the victims; is that right?

11             MR. DELANEY:  That's correct.

12             THE COURT:  That's fine.  And with respect to the

13   victim here as to the victims as to the unemployment insurance

14   fraud, obviously, there's been notice to the Maryland State

15   Department of Labor, but has there also been notice to any

16   victims whose identities were used and specifically the

17   individual A.C., with the initials A.C.

18             MR. DELANEY:  I believe that the victims of the

19   unemployment insurance have also been added to our system and

20   I will confirm.

21             THE COURT:  All right.  That's fine.  And that's

22   under the Crime Victims Rights Act, and so those persons have

23   been notified; is that right?

24             MR. DELANEY:  Yes, Your Honor.

25             THE COURT:  All right.  So the proffer here is that

1    you're going to be pleading guilty to Count 1 of the

2    indictment, you're one of three defendants charged in a

3    seven-count indictment in 21-0054, and you're proffering a

4    plea of guilty, I understand, in a few moments, to Count 1,

5    conspiracy to commit mail fraud.  And then you're proffering a

6    plea of guilty to the criminal information charging you with

7    mail fraud.  The conspiracy to commit mail fraud is in

8    violation of 18, United States Code, Section 1349.  And the

9    criminal information charging you with wire fraud is 18,

10   U.S.C., Section 1343, do you understand that, sir.

11          THE DEFENDANT:  Yes I do, sir.

12          THE COURT:  And I also note that in this plea

13   agreement in Paragraph 7d, the plea agreement dated July 22nd,

14   that there is an open guideline issue as to your role in the

15   offense, which again is a matter of the guideline calculation,

16   which is important in terms of where the guidelines would come

17   out on this.  And I'm going to explain the guidelines to you

18   in a minute, but there is an open guideline calculation.  And

19   that is the reason Mr. Delaney for the possibility that being

20   either total offense level of 26, 27, or 28; correct?

21          MR. DELANEY:  That is exactly --

22          THE COURT:  Are there any other guideline issues

23   that figure into that calculation?

24          MR. DELANEY:  Um --

25          THE COURT:  Is that guideline -- that variance

1    between 26, 27, and 28 is dependant upon -- I gather dependant

2    upon a determination of this defendant's role in the offense

3    under Section 3B1.1(c) of the advisory guidelines; is that

4    right?

5           MR. DELANEY:  Yes, Your Honor.

6           MR. BARDOS:  Judge?

7           THE COURT:  Yes.

8           MR. BARDOS:  I think the anticipated potential

9    offense level -- final offense level is 27, 28 or 29, not 26,

10   27 and 28.

11          MR. DELANEY:  Your Honor was referring to the

12   counts --

13          MR. BARDOS:  Oh, I'm sorry, are you doing the first

14   one?

15          THE COURT:  I'm sorry, I'm talking about what was in

16   the plea agreement here with respect under to the Paragraph 7d

17   of the plea agreement letter.

18          MR. BARDOS:  I'm sorry, yes.

19          THE COURT:  And it's either two, three, or four

20   levels.  And it's my understanding that that's the basis of

21   some -- let's say it's indefinite as to what the total offense

22   level would be; correct?

23          MR. BARDOS:  Yes, Your Honor.

24          THE COURT:  And I have a copy of the plea agreement

25   letter, but then I've been given another copy, have there been

1    changes since the July 22nd to the letter, Mr. Delaney?

2              MR. DELANEY:  No, Your Honor.  I do not believe

3    there have.

4              THE COURT:  All right.  And Ms. Tyson has the

5    original of that letter down at the clerk's desk, correct,

6    Ms. Tyson?

7              THE CLERK:  Yes, that's correct.

8              THE COURT:  So with that I think that we've gone

9    over the procedural posture here, the notice to the victims

10   the waiver of indictment as to criminal information.  And I

11   think we're now ready to place you under oath.

12             And as I indicated to you, Mr. Ulysse, this is very

13   important when you take this oath.  We have a lot of moving

14   parts in this case.  As of 25 minutes ago we still had moving

15   parts in this case.  And I was very concerned about you even

16   appearing here today.  And we're going to go over your

17   conditions of release, so this is very important, because

18   you're been placed under oath under penalties of perjury.  Do

19   you understand?

20             THE DEFENDANT:  Yes, I do, sir.

21             THE COURT:  And if it was determined that you lied

22   before me, totally apart from the charges here, the government

23   could prosecute you for perjury or making false statements, do

24   you understand that?

25             THE DEFENDANT:  Yes, I do, sir.

1          THE COURT:  All right.  So with that, Ms. Tyson, you

2   may administer the oath to the defendant.

3          THE CLERK:  Please raise your right hand.

4          (Defendant sworn.)

5          THE DEFENDANT:  Yes, I do.

6          THE CLERK:  Thank you.  You may lower your hand.

7   Please state your full name for the record.

8          THE DEFENDANT:  Medard Ulysse.

9          THE CLERK:  Mr. Ulysse, what is your age?

10          THE DEFENDANT:  38.

11          THE CLERK:  What year were you born, just the year?

12          THE DEFENDANT:  1984.

13          THE CLERK:  Mr. Ulysse, you've been charged with

14   Count 1 of the indictment in case 21-54-RDB, how do you wish

15   to plead to that count?

16          THE DEFENDANT:  I plead guilty.

17          THE CLERK:  And in case RDB-22-0335, you've been

18   charged with an information, how do you wish to plead to that

19   count?

20          THE DEFENDANT:  I plead guilty.

21          THE CLERK:  Thank you.

22          THE COURT:  Thank you, Ms. Tyson.

23          THE CLERK:  You're welcome.

24          THE COURT:  So the plea is guilty to Count 1 of the

25   indictment and the one-count criminal information.  And

1    consistent with that, what is set forth in the plea agreement,

2    the government will be dismissing counts 2 through 7 when he

3    returns here for sentencing.

4                Correct, Mr. Delaney?

5                MR. DELANEY:  Yes, Your Honor.  Thank you.

6                THE COURT:  You understand that, Mr. Ulysse, the

7    other counts will be dismissed against you, do you understand

8    that?

9                THE DEFENDANT:  Yes I do, sir.

10               THE COURT:  Sir, do you understand that you're now

11   under oath?

12               THE DEFENDANT:  Yes, I do.

13               THE COURT:  And do you understand that if you would

14   answer any of my questions falsely, as I've already mentioned

15   several times, you could be prosecuted in another prosecution

16   for perjury or for making false statements?

17               THE DEFENDANT:  Yes, I do.

18               THE COURT:  So it's very important you answer my

19   questions truthfully.  If you don't understand a question,

20   we'll stop and you talk to your lawyer, Mr. Bardos, who's very

21   well known to the Court and a prominent member of the bar of

22   this Court and he's been appointed to represent you here.

23               How far did you get in school, sir?

24               THE DEFENDANT:  Second year of college.

25               THE COURT:  You obviously then can read and write

1  the English language?

2  THE DEFENDANT:  Yes, sir, I can.

3  THE COURT:  Have you been treated recently for any

4  mental illness or addiction to narcotic drugs of any kind?

5  THE DEFENDANT:  No, I haven't.

6  THE COURT:  Are you currently under the influence of

7  any drugs or medication or alcoholic beverage of any kind?

8  THE DEFENDANT:  No, I'm not.

9  THE COURT:  And is there medication that you

10  normally take which you did not take today?

11  THE DEFENDANT:  No.

12  THE COURT:  Mr. Bardos, are you satisfied that your

13  client is competent to proceed with the guilty plea here as to

14  the Count 1 of the indictment as well as the criminal

15  information?

16  MR. BARDOS:  Yes, sir.

17  THE COURT:  Have you received a copy of the

18  indictment as well as the criminal information, that is the

19  written charges made against you, Mr. Ulysse?

20  THE DEFENDANT:  Yes, I have, sir.

21  THE COURT:  And have you fully discussed these

22  charges with your attorney, Mr. Bardos?

23  THE DEFENDANT:  Yes, I have.

24  THE COURT:  Have you discussed the whole situation

25  with him, including the evidence in the respective cases,

1    witnesses, and the possibility of a trial and even an appeal

2    if you were found guilty by a jury on either the criminal

3    information or Count 1 of the indictment?

4             THE DEFENDANT:  Yes, I have.

5             THE COURT:  Are you fully satisfied with Mr. Bardos

6    and his representation and the advice which he's given you?

7             THE DEFENDANT:  Yes, I am.

8             THE COURT:  I need to inquire as to that because

9    there was some indication that you wanted to retain your own

10   lawyer, not really sure -- I didn't understand how you were

11   saying you couldn't appear here because you couldn't afford to

12   come yet, and yet you were going to retain your own lawyer.

13   Was any thought of retaining your own lawyer as a result of

14   any dissatisfaction that you had with Mr. Bardos?

15            THE DEFENDANT:  I was satisfied with Mr. Bardos.  It

16   was really the day before I was supposed to take the guilty

17   plea I was on the phone with like my mother, members of my

18   family, and they were just, you know, they were just saying

19   no, what do you mean -- like we have to get you a lawyer,

20   we'll just get you a new lawyer.  I'm like I needed a lawyer

21   last year.  They're like, well, we have to sell some property.

22   We have some stuff in Haiti.  So that was it.  It wasn't like

23   I have the money to get a new lawyer right now, I was

24   basically trying to see if I could get more time to retain a

25   lawyer.  But at the same time, I'm a hundred percent satisfied

1    with Mr. Bardos, everything he's told me.

2              THE COURT:  Well, take your hands out of your

3    pockets, if you would, please?

4              THE DEFENDANT:  I'm sorry.

5              THE COURT:  The indictment was returned in this case

6    on March 4th of 2021, a year and a half ago.  And you appeared

7    here in the Court, your initial appearance was before

8    Magistrate Judge Copperthite on March the 26th of 2021.  And

9    there was a temporary detention of you.  And then there was a

10   notice of Mr. Bardos coming in as court-appointed counsel on

11   March the 30th.  And there was a detention hearing held before

12   then magistrate Judge Boardman, who's now a district judge, on

13   March the 31st of 20 21.  And you -- was he held in custody

14   for a period of time, Mr. Bardos?  I can't tell from the

15   docket sheet.

16             MR. BARDOS:  Yes, he was, Your Honor, until

17   September 10th, I believe, of 2021.

18             THE COURT:  All right.  So he was held in custody

19   from -- because you get credit for time served in federal

20   custody ultimately on the sentence that will be imposed.  You

21   basically appeared here on March the 26th, 2021.  And he was

22   in custody until when, in federal custody until when, Mr.

23   Bardos?

24             MR. BARDOS:  I believe it was September 10th,

25   2021.

1          THE COURT:  September 20, '21.

2          MR. BARDOS:  He turned himself in March, he was held

3    until September.  And then after litigated motion for

4    reconsideration he was released.

5          THE COURT:  So he was released on September 20?

6          MR. BARDOS:  September 10th, I believe, 2021.

7          THE COURT:  September 10th.  Take a look here.

8    There was a motion for reconsideration of his detention at a

9    virtual hearing that was conducted before Magistrate Judge

10   Coulson.  And then conditions of release were set on September

11   10th, he's been on release ever since; is that right?

12         MR. BARDOS:  That's correct.

13         THE COURT:  So he's been on release since September

14   10th from Magistrate Judge Coulson, because that's going to be

15   important because I'm going to go over what these conditions

16   of release are.  Because it's a lightly different position now

17   that he's pleading guilty on this.

18         MR. BARDOS:  He's also --

19         THE COURT:  Is there anything you've asked Mr.

20   Bardos to do which he's not done Mr. Ulysse?

21         THE DEFENDANT:  No, Mr. Bardos has been --

22         THE COURT:  I beg your pardon?

23         THE DEFENDANT:  No, no Your Honor.

24         THE COURT:  Are you fully satisfied with his

25   services?

1          THE DEFENDANT:  Yes, I am, sir.

2          THE COURT:  The Court has been a advised there's a

3    plea agreement in this case, which I've referenced, which has

4    been set forth in a letter July 22 of this year, from

5    Assistant U.S. Attorney Sean Delaney to your attorney, Richard

6    Bardos.  The original of that letter is at the clerk's desk,

7    Ms. Tyson's desk.

8          Mr. Bardos, if you'll retrieve that from Ms. Tyson,

9    so I can go over it with Mr. Mr. Ulysse.

10          Looking there at a copy of the original, rather, of

11    that plea agreement letter and any supplements or attachments

12    thereto, Mr. Ulysse, is that your signature there on page 11?

13          THE DEFENDANT:  Yes, it is, sir.

14          THE COURT:  And with respect to any attachments

15    thereto, or supplements thereto, is that your signature there?

16          THE DEFENDANT:  Yes, it is, sir.

17          THE COURT:  On page 16?

18          THE DEFENDANT:  Yes, it is sir.

19          THE COURT:  And did you have occasion to review and

20    discuss this plea agreement with Mr. Bardos before you signed

21    it in those two places?

22          THE DEFENDANT:  Yes, I have.

23          THE COURT:  And this is the same agreement which

24    you've signed; is that correct?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Has anyone made any other promises or

2     assurances to you in an effort to induce you to plead guilty

3     in this case, other than what is set forth in the plea

4     agreement letter?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  And Mr. Bardos, are you satisfied that

7     this plea agreement letter with any attachments sets forth the

8     complete agreement that your client has with the government.

9          MR. BARDOS:  Yes, sir.

10          THE COURT:  And Mr. Ulysse, are you satisfied that

11     this plea agreement letter with any attachments thereto sets

12     forth the complete agreement you have with the government?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  With respect to both of these charges?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  All right.  Mr. Bardos, if you'll return

17     that plea agreement letter to Ms. Tyson.  And that will be

18     introduced as Government Exhibit No. 1 for purposes of these

19     proceedings.  And I gather that will be placed under seal; is

20     that correct, Mr. Delaney?

21          MR. DELANEY:  Yes, Your Honor.

22          THE COURT:  Correct, Mr. Bardos, under seal.

23          MR. BARDOS:  The --

24          THE COURT:  You want this plea agreement to be under

25     seal?

1          MR. DELANEY:  Actually, Your Honor, it does not need
2     to be placed under seal.  Thank you.
3          THE COURT:  All right.  That's fine.  You want it
4     under seal, Mr. Bardos?
5          MR. BARDOS:  The sealed supplement, yes.  The main
6     document, no.
7          THE COURT:  All right.  Okay.  Then one portion will
8     be placed under seal one will not be placed under seal.
9          Now do you understand looking at that plea agreement
10    letter, Mr. Ulysse, and I think Mr. Bardos has a copy of it.
11    In paragraph 23 of that plea agreement letter, it provides
12    that the Court is not a party to the agreement.  I'll
13    certainly abide by the fact that the sentence cannot go below
14    48 months.  But I'm not a party to it in any way other than
15    that -- as I've indicated to you, the government assured
16    itself that the sentence can not be below 48 months.  I have
17    no knowledge at this time how high the sentence could
18    potentially go, but under no circumstances could it go below
19    48 months.  And I'll accept your guilty plea under those
20    terms, but I'm in the a party to the agreement, do you
21    understand that?
22          THE DEFENDANT:  Yes, sir.
23          THE COURT:  I haven't signed this anywhere, you
24    understand?
25          THE DEFENDANT:  I understand, sir.

1          THE COURT:  And I'm indicating for the record that I

2   have -- there's no commitment under this agreement as to what

3   the top end would be and where I'm going to sentence you,

4   other than the fact that there's a agreement that you will not

5   be sentenced to less than four years.

6          Has anybody tried to force you or threaten you to

7   plead guilty in this case?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Are you pleading guilty on your own

10  freely because you're in fact guilty of the offenses as

11  charged?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  First of all, as to conspiracy to commit

14  mail fraud.

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  The elements of that are that on or

17  about the dates set forth in the indictment, which states from

18  on or about January 2018 through in or about November of 2019,

19  these are the elements set forth in paragraph 2 of the plea

20  agreement letter, that you and at least one other person

21  entered into an unlawful agreement, and that the purposes of

22  that agreement was to knowingly execute or attempt to execute

23  a scheme and artifice to defraud, or to obtain money by means

24  of materially false and fraudulent pretenses, representations,

25  and promises, and the use or cause the use of the mails as

1    charged in the indictment, and that you knowingly and

2    willfully became a member of that conspiracy, do you

3    understand the elements of that offense?

4              THE DEFENDANT:  Yes, I do, sir.

5              THE COURT:  And furthermore, the elements as to wire

6    fraud charged in the criminal information are that there was a

7    scheme and artifice to defraud and obtain money by means of

8    materially false pretenses, and that on or about the date

9    charged in the criminal information that I have read to you,

10   specifically -- specifically from July 2020 through November

11   2020, that you committed wire fraud, and that the elements of

12   that offense are that not only was there a scheme and artifice

13   to defraud, but that you knowingly and willfully participated

14   in the scheme and caused the use of interstate wires to

15   enforce that scheme.  Do you understand the basic elements of

16   this the offense to which you're pleading guilty?

17             THE DEFENDANT:  Yes, I do, sir.

18             THE COURT:  And they are both felony offenses, do

19   you understand that?

20             THE DEFENDANT:  Yes, I do, sir.

21             THE COURT:  And you're adjudicated guilty of those

22   offenses here today you'll lose certain valuable civil rights.

23   You lose the right to have a firearm.  You lose the right to

24   vote.  You lose the right to have ammunition, do you

25   understand that?

1          THE DEFENDANT:  Yes, I do, sir.

2          THE COURT:  Is your client an American citizen, Mr.

3    Bardos?

4          MR. BARDOS:  Yes, sir.

5          THE COURT:  So you are -- he's a naturalized

6    American citizen?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  He's a regular American citizen, but you

9    might lose other rights as a American citizen to keep certain

10   licenses or permits or jobs or be able to keep public benefits

11   such as public housing loans, Section 8 loans, for example.

12   You lose the right to all of those federal benefits because of

13   your felony convictions here if I accept these pleas of

14   guilty.  Do you understand that?

15         THE DEFENDANT:  Yes, I do, sir.

16         THE COURT:  And if you've been convicted of another

17   crime in the past, and you were on parole or probation for any

18   of those other offenses, you could face the possibility of

19   violation of parole or probation, because of your conviction

20   here, do you understand that?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  And furthermore, if you were convicted

23   of another crime in the future, and you were before another

24   judge in another courtroom, as a result of your conviction

25   here on these charges you might face a harsher sentence

1   because of your conviction here, do you understand that,

2   Mr. Ulysse?

3           THE DEFENDANT:  Yes, I do, sir.

4           THE COURT:  And you also face the matter of

5   restitution and forfeiture of certain property as to the

6   forfeiture of certain property that's set forth in paragraphs

7   14 through 18, and also at paragraph 19 of the plea agreement

8   notes that you stipulate as to the abandonment of certain

9   property as listed in paragraph 19.  Do you understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And those items include computer

12   equipment; is that right, Mr. Delaney?

13          MR. DELANEY:  Yes, Your Honor.

14          THE COURT:  All right.

15          MR. DELANEY:  As well as a firearm and ammunition.

16          THE COURT:  Yes.  Yes.  As was noted in paragraph 3

17   of the plea agreement letter you understand that the maximum

18   sentences for these offenses are as to Count 1 the conspiracy

19   charged in the indictment, a maximum penalty of 20 years

20   imprisonment and three years of supervised release and a fine

21   of $250,000, or twice the gross loss as a result of the fraud.

22   And as to Count 2, the criminal information charging you with

23   the wire fraud, it is also the same maximum penalties of 20

24   years imprisonment, three years of supervised release, and a

25   fine of $250,000.  Do you understand that, sir?

1          THE DEFENDANT:  Yes, I do, sir.

2          THE COURT:  And there's a special assessment of each

3    count in the amount of $100 that's automatically required by

4    statute.  Do you understand that?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  That will just be deducted from your

7    prison wages.

8          I would also note on the matter of restitution, this

9    Court may enter an order of restitution.  And Paragraph 13 of

10   the plea agreement letter specifically notes that the

11   restitution that for which you may be jointly and severally

12   responsible with any others could go up to as high as $2.7

13   million as to the conspiracy charge or $2,703,520 to be exact.

14   And as to the wire fraud charge the restitution could go up to

15   $618,767.  Do you understand that, sir?

16         THE DEFENDANT:  Yes, I do, sir.

17         THE COURT:  All right.  And you'll be ordered to pay

18   so much per month.  You, obviously, during a period of

19   supervised release will not be able to pay all of that and it

20   will become an issue with the Financial Litigation Unit of the

21   U.S. Attorney's Office with respect to payments of

22   restitution, do you understand that?

23         THE DEFENDANT:  Yes, I do, sir.

24         THE COURT:  And any payment of restitution would be

25   joint and several with respect to anyone else guilty of these

1    offenses as well, meaning that they may or may not share in

2    the payment of it if they were to be convicted do you

3    understand that?

4              THE DEFENDANT:  Yes, I do.

5              THE COURT:  Have I correctly summarized the

6    restitution posture from the point of view of the government,

7    Mr. Delaney?

8              MR. DELANEY:  Yes, Your Honor.  Thank you.

9              THE COURT:  Mr. Bardos, from your point of view?

10             MR. BARDOS:  Yes, sir.

11             THE COURT:  Do you understand, I mentioned

12   supervised release, Mr. Ulysse, supervised release involves

13   your compliance with certain conditions set by the Court, and

14   monitored by the probation office.  Do you understand that if

15   you were to violate conditions of supervised release after a

16   prison sentence, you could be sent back to prison without any

17   credit for the time already served?

18             THE DEFENDANT:  Yes, I do, sir.

19             THE COURT:  It would be a totally separate matter,

20   do you understand that?

21             THE DEFENDANT:  Yes, I do.

22             THE COURT:  Are you satisfied then, Mr. Bardos, that

23   Mr. Ulysse understands all the possible consequences of his

24   guilty pleas here today.

25             MR. BARDOS:  Yes, Your Honor.

1          THE COURT:  And are you satisfied, Mr. Ulysse, that

2   you understand all the possibility consequences of your plea

3   of guilty here today?

4          THE DEFENDANT:  Yes, I do, sir.

5          THE COURT:  Let me just go over the process here in

6   federal court with respect to sentencing.  And in the case of

7   a partial (C) plea here, that's how I view this, it's also

8   important for me to make sure you understand that the basis of

9   my agreeing that the sentence would not be below 48 months

10  also relates to an analysis that I would conduct under the

11  guidance of two Supreme Court opinions in the last 17 and a

12  half years.  The Federal Sentencing Guidelines are referenced

13  in paragraph 5, I think -- I'm sorry paragraph 6 of your plea

14  agreement letter.

15          And as to those guidelines, the United States

16  Supreme Court issued an opinion in January of 2005, in a case

17  of *United States v. Booker*, in which the Supreme Court of the

18  United States upheld the constitutionality of those

19  guidelines, but did so with the deletion of two particular

20  sections of the guidelines, which had previously rendered the

21  guidelines mandatory.  The Supreme Court noted with the

22  deletion of those mandatory provisions, those guidelines were

23  constitutional, but from that point forward in January of

24  2005, the Federal Sentencing Guidelines were rendered

25  effectively advisory and were to be applied in an advisory

1   context.  Meaning that federal judges, while not bound to

2   apply the guidelines, must still consider them when taking --

3   take them into account when imposing a sentence, subject to

4   review by courts of appeals for unreasonableness.  Here there

5   is essentially a waiver of any sentence, as long as it's not

6   below 48 months here by the parties.

7        The other factors are to be considered by me under

8   Section 3553 of Title 18, which is referenced there in

9   paragraph 6 of your plea agreement letter.  Those other

10  factors include your personal history and characteristics, the

11  nature and circumstances of the offense, sentences imposed

12  upon similarly situated individuals for these types of

13  fraudulent crimes.  All those factors would be taken into

14  account by me when I impose a sentence when you return here

15  for sentencing.  Do you understand that?

16       THE DEFENDANT:  Yes, I do, sir.

17       THE COURT:  I said there were two key opinions, and

18  the second of those two opinions, the case of *Gall versus the*

19  *United States* decided in December of 2007, about three years

20  after the *Booker* case, the Supreme Court specifically noted

21  that federal judges should not presume that the guideline

22  range is reasonable, but it is a starting point in a multistep

23  process, pursuant to which first there's a calculation of a

24  guideline range and then there's a consideration of other

25  factors apart from the guidelines.  The goal being to impose a

1   sentence which is sufficient but not greater than necessary to

2   achieve the goals of sentencing.

3           So that would be the process here.  There will be a

4   calculation of the guideline range.  And there's some

5   guideline issues that I have to address, which is why we spent

6   time on that before we started today.  Because even once the

7   guideline calculation is determined, I'm not bound by it.  And

8   I'll consider other factors as well.  Do you understand that?

9           THE DEFENDANT:  Yes, I do.

10          THE COURT:  And paragraph 7 of the plea agreement

11  notes certain stipulations, there's certain matters that

12  remain under dispute.  But essentially with the calculations

13  here, as noted by paragraphs -- by paragraph 7 of the plea

14  agreement letter, it's anticipated that the resulting level

15  for the conspiracy charge would be either a total offense

16  level of 26, 27, or 28.  And for the wire fraud charge a

17  matter of 20.  And it remains to be seen, ultimately, in terms

18  of how I calculate that out.  That's what's anticipated, do

19  you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And you have stipulated in paragraph 11

22  that the sentence here will not be less than 48 months and it

23  may go higher, obviously, in terms of the guideline

24  calculation, that remains to be seen what it will be.  Do you

25  understand that?

```
1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  And paragraph 9 notes there is no

3    agreement as to your criminal history and that's another

4    factor I'll be determining after reviewing the presentence

5    report from the probation office.  And that will be important

6    as well.

7              And pursuant to paragraph 10 of the plea agreement,

8    with respect to the guidelines there are no other guideline

9    issues in dispute apparently; is that correct, Mr. Delaney?

10             MR. DELANEY:  Yes, Your Honor.  Thank you.

11             THE COURT:  Correct, Mr. Bardos?

12             MR. BARDOS:  Yes, sir.

13             THE COURT:  All right.  As I've said, at the time of

14   sentencing, in paragraph 11 the government will recommend a

15   sentence somewhere above 48 months, do you understand that?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Now, do you understand that as a result

18   of your guilty plea here this afternoon that you're not

19   allowed to own or possess or use a firearm, do you understand

20   that?

21             THE DEFENDANT:  Yes, I do.

22             THE COURT:  That would be a separate violation if

23   you were found with a firearm, do you understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Now I'll not be able to determine the
```

1    advisory guideline range in this case, Mr. Ulysse, until a

2    presentence investigation report has been prepared by the U.S.

3    probation officer assigned to this case.  And we believe it

4    will be Nicole Wonneman.  She will prepare a presentence

5    report and she'll give a copy to Mr. Delaney and Ms. Cusson or

6    Ms. Goo.  And they will review it, note any objections to it.

7    She'll give a copy to Mr. Bardos.  He'll review it with you

8    and he either will or will not make any objections.  And

9    ultimately that report will either be changed or not changed

10   and it will come to me.  Do you understand that?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  So the sentence imposed could be

13   different from any exact estimate given by Mr. Bardos, because

14   he doesn't have any -- I have no idea what I'm going to do in

15   terms of it being above 48 months, where, because I have to

16   see the report first.  Do you understand that?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  Do you also understand, Mr. Ulysse, that

19   parole has been abolished in the federal system?  Let me

20   explain that to you.  Let's say the sentence were -- it can't

21   be below 48 months, let's say if the sentence was 60 months,

22   five years.  In the state system under normal process under

23   state of Maryland criminal laws you might be subject to a

24   potential sentence of just one-third of that, maybe 20 months,

25   maybe year and a half, less than two years, and then on parole

1   for the balance of it.  That's not the way the federal system

2   works.  Do you understand that?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Whatever the sentence is, that's the

5   sentence.  You can get between 50 and 54 days a year of good

6   time credit.  So in my example a five-year sentence, over the

7   course of the first four years you might get six months of

8   good time credit, which means maybe a five-year sentence would

9   translate out to four years and maybe two or three months.  Do

10  you understand that?

11         THE DEFENDANT:  Yes, I do, sir.

12         THE COURT:  But there is no parole in the federal

13  system.  You don't just serve one third of your time and be

14  put on parole afterwards?

15         THE DEFENDANT:  Yes, I do, sir.

16         THE COURT:  And with respect to rights of appeal,

17  paragraph 12, notes that you and the government waive appeal

18  of any lawful sentence as long as it's not less than 48

19  months.  That's how I interpret this waiver of appeal.  The

20  government does not waive appeal if the sentence is less than

21  48 months.  Other than that, both sides waive appeal of a

22  lawful sentence, do you understand that?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  And Mr. Delaney, I gather from the point

25  of view of the government, as to these guideline issues that I

1    will address there's a waiver of appeal on the guideline

2    issues from the point of view of the government; correct?

3              MR. DELANEY:  Yes, Your Honor.

4              THE COURT:  Correct, Mr. Bardos?

5              MR. BARDOS:  Yes, sir.

6              THE COURT:  All right.  And paragraph 12c

7    specifically notes, Mr. Ulysse, that there's a waiver of your

8    rights under the Freedom of Information Act.  That is a law

9    that was passed by the U.S. Congress that gives rights to

10   American citizens to seek information from certain federal

11   government agencies.  You've had access to discovery in this

12   case over the last year, more than a year from your attorney,

13   Mr. Bardos, but now that you're pleading guilty you have no

14   further right to seek -- to file a Freedom of Information Act

15   request seeking information from the Department of Justice,

16   from the Department of Labor, from the FBI, you have no right

17   to file any such request, do you understand that?

18             THE DEFENDANT:  Yes I do.

19             THE COURT:  And that's waived in paragraph 12c.

20   Also, want to make sure that you understand your waiver of

21   certain rights that are set forth in paragraph 5 of the plea

22   agreement letter, specifically, with respect to your waiver of

23   a jury trial here.  For the trial in this case, which has been

24   set to start, I believe it's on October the 25th, if I'm not

25   mistaken.  Hold on one second, here.  I think it's around --

1    it's been postponed before, but because of a request of

2    another co-defendant, but it's around October 25th, maybe four

3    weeks from now, five weeks from now.

4         Do you understand that you have a right to plead not

5    guilty to any of these charges here that you're pleading

6    guilty to today, and you'd have a right to a trial by jury.

7    And that would be about four weeks from now.  And you could

8    persist in those pleas of not guilty and you'd have a right to

9    a trial by jury on any and all charges for which 12 people

10   would be selected as jurors.  Do you understand that?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  And do you understand you have the right

13   to participate with Mr. Bardos in the selection of a jury in

14   this case?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  And do you understand that at trial you

17   would be presumed to be innocent on both of these charges

18   and -- all of the charges, and the government would have to

19   prove your guilt beyond a reasonable doubt.  Do you understand

20   that?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Do you understand there would have to be

23   a unanimous verdict of all 12 jurors before you could be

24   convicted on any count?

25        THE DEFENDANT:  Yes, sir.

1          THE COURT:  The jury would have to decide each count

2     separately, they could find you not guilty on some counts and

3     guilty on others.  But in order to find you guilty there would

4     have to be a unanimous verdict.  If there was one juror who

5     held out and didn't agree, there would be a hung jury on that

6     charge you'd have to have a retrial.  Do you understand?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And do you understand you have the right

9     to the assistance of your counsel for your defense, and the

10    right to see and hear all witnesses and to cross-examine all

11    witnesses, Mr. Ulysse?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  And do you understand on your own part

14    you have the right to decline to testify unless, you

15    voluntarily I elected to testify in your own defense?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Under the 5th Amendment to our

18    Constitution you have a privilege against self-incrimination.

19    The government could not call you as a witness.  I could not

20    call you as a witness.  Do you understand that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  But if you did go to trial and choose to

23    testify, you could then be subject to impeachment on

24    cross-examination and could be questioned about any prior

25    criminal record that you have, do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you also understand if should you

3     decide to go to trial, but not testify or put on any evidence,

4     those facts could not be used against you?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Specifically, I would tell the jury when

7     the jury began their deliberations, I would tell them that if

8     you had not testified or put on any evidence, I would tell

9     them that you did not testify or put on any evidence and I

10    would tell the jury specifically that they should not consider

11    that in any way or hold that against you.  And I would

12    specifically tell the jury that the burden is always upon the

13    government to prove guilt beyond a reasonable doubt.  That

14    burden never shifts to a criminal defendant.  A criminal

15    defendant is never required to prove his innocence.  The

16    burden is always upon the government to prove guilt beyond a

17    reasonable doubt, do you understand your rights in that

18    regard, sir?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  And also you would have the right to the

21    issuance of subpoenas to compel the attendance of witnesses to

22    testify on your behalf.  Do you understand that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  You could give the names of any

25    witnesses whom you wanted to call to Mr. Bardos.  And he would

1    give those names to the clerk of the Court.  And because

2    you're indigent, represented by court-appointed counsel, at no

3    cost to you those subpoenas would be served.  And just as the

4    government can compel people to come into the courtroom, so

5    can you.  And those persons would be required to come into the

6    courtroom upon receiving subpoenas and testify on your behalf.

7    Do you understand that, sir?

8                    THE DEFENDANT:  Yes, sir.

9                    THE COURT:  And do you understand if there was a

10   trial in this case and if you were found guilty by a jury on

11   any charge, there would be no waiver of appeal as there is

12   now, you would be able to appeal any finding of guilty on

13   charges, you would be able to appeal the sentence in the case.

14   Do you understand that?

15                   THE DEFENDANT:  Yes, sir.

16                   THE COURT:  And do you further understand that by

17   entering this plea of guilty, if I accept that plea in a few

18   moments there will be no trial, and you will have waived or

19   given up your rights to a trial, as well as all the other

20   rights associated with a trial?

21                   THE DEFENDANT:  Yes, sir.

22                   THE COURT:  Now the elements of the offense to which

23   you're pleading guilty, I've already summarized for you, as to

24   the conspiracy to commit mail fraud charge, that at least you

25   and one other person entered into an unlawful agreement.  And

1    that the purpose of the agreement was to execute and attempt a

2    scheme to defraud, by means of obtaining money by false

3    pretenses, and that you knowingly became a member of that

4    conspiracy, as to the Count 1 of the indictment.

5            And as to the one-count criminal information with

6    respect to the elements of wire fraud, the elements being that

7    there was a scheme and artifice to defraud by false pretenses,

8    that you knowingly, willfully participated in that scheme with

9    the knowledge of its fraud.  And that the perpetration of that

10   fraud resulted in the use of interstate wires as noted in the

11   criminal information.  Do you understand the basic elements of

12   the offense to which you're pleading guilty here today?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  With that you may be seated for a few

15   moments and I'll call upon Assistant United States Attorney

16   Sean Delaney to summarize or make a representation concerning

17   the facts the government would be prepared to prove at trial,

18   so as to establish independent factual basis for these pleas

19   of guilty, both to Count 1 of the indictment and as to the

20   one-count criminal information.  And I would note that the

21   factual basis for this Court's acceptance of those guilty

22   pleas is also contained in Attachment A the stipulation of

23   facts, which addresses both the elder fraud scheme, as relates

24   to Count 1 of the indictment, as well as the unemployment

25   insurance benefit fraud scheme, which relates to the one-count

1   criminal information.

2           Mr. Delaney, I'll be delighted to hear from you.

3           MR. DELANEY:   Thank you, Your Honor.   The defendant

4   Medard Ulysse was a resident of Miami Florida and Covington,

5   Georgia.   From at least in or about January 2018 through in or

6   about November 2019, in the district of Maryland and

7   elsewhere, Mr. Ulysse conspired with others known and unknown

8   to commit mail fraud.   Specifically, Mr. Ulysse's

9   co-conspirators persuaded elderly victims to sends thousands

10   of dollars in cash through the United States Postal Service,

11   and by private and commercial interstate carriers to members

12   of the conspiracy under false pretenses.   That A, the money

13   would be used to help victim's relatives pay legal or other

14   expenses in connections with crimes and other incidents that

15   had not occurred.   And B, the money would be sent to

16   particular individuals at their addresses to the members of

17   the conspiracy who falsely claimed to reside at those

18   addresses.   We refer to that collectively as a scheme to

19   defraud.

20           Mr. Ulysse's co-conspirators telephoned elderly

21   victims throughout the United States while posing as a police

22   officer, lawyer, or other individual, falsely told the victim

23   that a relative, typically the victim's grandchild, had been

24   incarcerated in connection with a car accident or traffic stop

25   involving a crime, and needed money for bail and legal fees,

1    often tens of thousands of dollars.  Co-conspirators also

2    posed as the victim's relatives themselves in order to further

3    induce the victim's to send the cash.  The co-conspirators

4    described the situation as extremely serious, sometimes

5    indicating that illegal drugs had been found in the vehicle,

6    or that the occupant of another car was injured.

7            In order to conceal the crime, the co-conspirators

8    told the victims false information like there had been a gag

9    order placed on the case requiring secrecy, or the situation

10   was embarrassing for the grandchild and the victim should not

11   share the information with others.  During the telephone calls

12   the co-conspirators directed the victim to send cash to a

13   particular address via overnight delivery service, such as

14   United States Parcel -- Postal Service priority mail, FedEx,

15   and United Parcel Service.

16           If the victims sent cash as directed by the

17   co-conspirators, the co-conspirators would call the victims

18   again and ask for more cash, claiming that additional funds

19   were necessary for various purposes.  Such as the grandchild's

20   legal expenses, bail, or fines, or to pay damages.  The

21   co-conspirators obtained tens of thousands of dollars from the

22   victims.

23           In order to conceal the crime, co-conspirators

24   identified residential locations across the country where the

25   cash should be sent.  Including, but not limited to, addresses

1    in Maryland, Delaware, Pennsylvania, and Florida.  These

2    identified residential locations would either be vacant or for

3    sale, so no one would be at those addresses at the time of the

4    deliveries.  The government contends that Mr. Ulysse directed

5    these activities.

6          Mr. Ulysse recruited people to assist in retrieving

7    the packages of cash when they were delivered to the specified

8    residential locations.  Co-conspirators opened the packages,

9    counted the cash inside, and sent Mr. Ulysse video recordings

10   of packages being opened and counted.  Co-conspirators

11   delivered the fraud proceeds to Mr. Ulysse and to other people

12   involved in the scheme.  The government contends that

13   Mr. Ulysse directed these activities.  The government contends

14   that Mr. Ulysse distributed and directed other co-conspirators

15   to distribute cash payments to other members of the conspiracy

16   for their participation in the scheme.

17          On or about January 8th, 2019, a member of the

18   conspiracy contacted J.N., then 79 years old from La Quinta,

19   California, by phone claiming he was a attorney for J.N.'s

20   granddaughter.  The caller stated that J.N.'s granddaughter

21   had been arrested and J.N. needed to send bail money to an

22   address in Baltimore, Maryland.  The caller told J.N. he could

23   not tell anyone because the judge had imposed a gag order.

24   J.N. sent a package containing $9,400 cash via FedEx to the

25   Baltimore address as instructed.

1          Also on or about January 8th, 2019 a member of the

2    conspiracy contacted by -- contacted R.H., the 89 -- 89 years

3    old from Bainbridge Island, Washington, by phone and told him

4    that his grandson was in jail, and R.H. needed to send bail

5    money to an address in Baltimore Maryland.  The caller told

6    R.H. that once his grandson appeared in court the bail money

7    would be returned.  R.H. sent a package containing $9,000 cash

8    via UPS to the Baltimore address as instructed.

9          On the morning of January 9th, 2019, the packages of

10   cash sent by J.N. and R.H. to Baltimore, Maryland, were

11   delivered by FedEx and UPS respectively.  Mr. Ulysse utilized

12   his Lyft ride share account to provide transportation for

13   retrieval of the packages between the two addresses.

14         On January 18th, 2019, F.W., then 87 years old from

15   Groton, Connecticut, received a phone call from a person who

16   falsely claimed to be his grandson.  While on the phone the

17   caller claiming to be his grandson passed the phone to another

18   individual who falsely claimed to be a narcotics police

19   officer.  F.W. was told by the purported police officer to

20   send $9,000 cash by FedEx to another address in Baltimore so

21   that his grandson could be released.  F.W. sent a package

22   containing $9,000 in cash via FedEx to that address.

23         On January 9th, 2019 the purported police officer

24   again called F.W. and falsely claimed that there was a fine

25   for the incident involving his grandson.  F.W. was then

instructed by the purported police officer to send an
additional $9,400 to the same address, which F.W. did.

On January 11th, 2019, the purported police officer
again called F.W. and falsely claimed that any incident
involving F.W.'s grandson, there was an additional charge for
obstruction of justice.  F.W. was again instructed by the
purported police officer to send an additional $9,800 to the
same address, which F.W. did.

On January 12th, 2019, the package of cash sent by
F.W. was delivered to Baltimore, Maryland, via UPS.  Mr.
Ulysse utilized his Lyft ride share account to provide
transportation to the address for retrieval of the package.

In March 2019 a member of the conspiracy contacted
R.S., an 83-year-old woman from St. Charles, Illinois, by
phone, claiming to be R.S.'s grandson.  And told R.S. that he
had been in an accident and was in jail.  The caller stated
that R.S. needed to send money to an address in Lancaster,
Pennsylvania to pay for purported damages.  R.S. sent a
package containing $20,000 cash to the Lancaster address as
instructed.

On or about March 19th, 2019, Mr. Ulysse directed
another member of the conspiracy to retrieve the package sent
to Lancaster, Pennsylvania, by R.S.  Mr. Ulysse directed the
co-conspirator to video himself opening the package of cash
and then send the video to Mr. Ulysse so that he could view

1  the amount of cash in the package.

2          As a result of the execution of the elder fraud

3  scheme, between January 2018 and August 2019, Mr. Ulysse and

4  others caused at least 83 different victims to be directed to

5  send a total of at least $2,420,280.  Of that amount,

6  $1,834,545 was not returned to victims.  Mr. Ulysse's conduct

7  resulted in substantial financial hardship to at least five of

8  the victims.

9          There is also an attachment, Attachment A to the

10  plea agreement.  There is also a summary of the unemployment

11  benefits scheme, which Your Honor substantially read --

12          THE COURT:  Yes, you've just summarized the facts

13  that give rise to the factual predicate for this Court's

14  acceptance of a guilty plea as to Count 1 of the indictment.

15  And now you're about to summarize the factual stipulation as

16  to the one-count criminal information; correct?

17          MR. DELANEY:  That's correct, Your Honor.  And I

18  will skip past the paragraphs summarizing the unemployment

19  benefit fraud scheme that has already been -- that has already

20  been summarized by the Court and move forward to, from at

21  least in or about April 2020, through at least in or about

22  November 2020, in the district of Maryland and elsewhere,

23  Mr. Ulysse conspired with others known and unknown, to devise

24  and execute a scheme to obtain unemployment benefits and other

25  property by fraudulent pretenses and representation.

1      In order to execute the fraud scheme, Mr. Ulysse and

2   his co-conspirators knowingly and willfully caused writings,

3   signals, pictures, and sounds to be transmitted by interstate

4   wire.  Specifically, Mr. Ulysse and his co-conspirators

5   obtained and attempted to obtain money, merchandise, and other

6   property by submitting false applications in the names of

7   identity theft victims, claiming unemployment benefits to

8   which he and other members of the conspiracy were not

9   entitled.

10      He and his co-conspirators submitted these

11   fraudulent claims for unemployment benefits through the

12   internet to the Maryland Department of Labor and the

13   California Employment Development Department, as well as other

14   state workforce agencies.  They contained individual victim's

15   names, Social Security numbers, and date of births.  And those

16   workforce agencies disbursed benefits through debit cards

17   issued in the name of the applicants and mailed to the

18   addresses provided in the applications.  By completing and

19   submitting these applications, Mr. Ulysse and his

20   co-conspirators caused the issuance of debit cards in their

21   names mailed to locations in Maryland and elsewhere.

22      As a result of the fraudulent applications the

23   Maryland Department of Labor and other state work force

24   agencies approved the disbursement of unemployment payments

25   that included federal funds.  Mr. Ulysse and his

1    co-conspirators obtained these payments from locations in

2    Maryland and elsewhere, and debit cards were issued as a

3    result of these fraudulent claims and used to withdraw those

4    funds.

5           Specifically, between July 20th, 2020 and November

6    11th, 2020, Mr. Ulysse conducted fraudulent transactions

7    through the use of debit cards issued in the names of at least

8    six identity theft victims and funded with unemployment

9    compensation including the federal funds.  Each debit card

10   displayed a victim's name.  The unemployment benefits were

11   disbursed by Maryland Department of Labor and other state

12   workforce agencies as a result of the fraudulent claims.

13   Mr. Ulysse was aware that the real person's identifies were

14   used to file fraudulent unemployment claims and the debit

15   cards were issued in the names of real people.

16          On or about August 16th, 2020, Mr. Ulysse used a

17   debit card issued in the name of R.B. to withdraw $440 from an

18   ATM in Baltimore, Maryland.  The debit card was issued in

19   response to a fraudulent application for unemployment

20   compensation submitted in R.B.'s name.

21          On or about August 26th, 2020, Mr. Ulysse utilized a

22   debit card issued in the name of R.B. to withdraw $500 from an

23   ATM in Hampstead, New York.  This debit card was also issued

24   in response to a fraudulent application for unemployment

25   compensation submitted to the Maryland Department of Labor in

1   R.B.'s name.

2           On September 26th, 2020, Mr. Ulysse used a debit

3   card issued in the name of A.C. to withdraw $980 from an ATM

4   in Baltimore, Maryland.  This debit card was issued in

5   response to a fraudulent application submitted to the

6   California Employment Development Department in A.C.'s name.

7           On November 30th, 2020, Mr. Ulysse was the driver of

8   a vehicle that was stopped in Valdosta, Georgia, by Lowndes

9   County Sheriff's Department.  The department conducted a

10  search of the vehicle and recovered debit cards in the name of

11  R.B., R.P., and A.C., along with over 25 other debit cards

12  issued in names other than Mr. Ulysse, as well as multiple

13  electronic devices.

14          As a result of the execution of the unemployment

15  insurance benefits scheme, between April 2020 and November

16  2020, Mr. Ulysse and others submitted at least 143 fraudulent

17  applications in the names of various identity theft victims

18  resulting in the funding of at least $618,767 in fraudulent

19  unemployment benefits.  Losses in this amount were reasonable

20  foreseeable to Mr. Ulysse.

21          THE COURT:  Thank you very much, Mr. Delaney.  And

22  the record will reflect you've essentially summarized and read

23  almost verbatim the Attachment A to the plea agreement letter

24  as to both of the charges here to which the defendant is

25  pleading guilty.

1          If you'll please stand, Mr. Ulysse.  Thank you.

2          Mr. Bardos, are there any additions or modifications

3   to that statement of facts?

4          MR. BARDOS:  No, sir.

5          THE COURT:  Mr. Ulysse, is that an accurate summary

6   of the facts in this case, both with respect to the charges in

7   Count 1 and the conspiracy charge in the indictment with

8   respect to the -- one second here, with respect to the elder

9   fraud scam?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And are they also -- is that an accurate

12   summary as to the unemployment insurance benefit fraud scheme?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  I'm sorry?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Did you, in fact, commit the crime as

17   summarized by the government by Mr. Delaney?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  You still wish to plead guilty, sir?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Specifically, then Mr. Ulysse, how do

22   you plead to Count 1 of the indictment, guilty or not guilty?

23          THE DEFENDANT:  Guilty.

24          THE COURT:  How do you plead to the one count

25   criminal information charging you with wire fraud?

1          THE DEFENDANT:  Guilty.

2          THE COURT:  I'm sorry charging you with -- wire

3    fraud, yes, guilty or not guilty?

4          THE DEFENDANT:  Guilty, sir.

5          THE COURT:  Mr. Bardos, is there any reason that you

6    know of why this could Court should not accept these guilty

7    pleas?

8          MR. BARDOS:  No, Judge.

9          THE COURT:  It is the finding of this Court in the

10   case of United States versus Ulysse, criminal number

11   RDB-21-0054, and criminal number RDB-22-0335, that the

12   defendant is fully competent and capable of entering informed

13   pleas as to both charges and that the defendant is aware of

14   the nature of the charges and the relevant consequences of his

15   pleas of guilty.

16          And the Court further finds that his pleas of

17   guilty, on the advice of competent counsel, with whose

18   services he is satisfied is a knowing -- are knowing and

19   voluntary pleas supported by independent bases in fact,

20   sustaining each of the essential elements of -- with respect

21   to both offenses.  And the plea is to be accepted and the

22   defendant is now adjudged guilty of the offenses as set forth

23   in the Count 1 of the indictment, conspiracy to commit mail

24   fraud, in violation of 18, United States Code, Section 1349,

25   and guilty as to the one-count criminal information charging

1    him with wire fraud in violation of 18, United States Code,

2    Section 1343.

3            Mr. Ulysse, a written presentence investigation

4    report will be prepared by Ms. Nicole Wonneman, the U.S.

5    Probation Office, to assist the Court in sentencing.  And you

6    will be asked to give information for that report.  And your

7    attorney, Mr. Bardos, will be with you when you meet with the

8    probation officer.  And I'll permit both you and Mr. Bardos to

9    read the presentence investigation reports and to file any

10   objections to it.  And both you and Mr. Bardos will be

11   afforded the opportunity to speak on your behalf at the

12   sentencing hearings.  So I will refer you to the U.S.

13   probation office for the presentence investigation and report.

14           Your date of sentencing on both of these charges

15   will be on December 19, 2022, at 11:00 o'clock a.m.  And I

16   will sign the regular sentencing order to that effect here

17   today.  Ms. Wonneman's report will be due by November the 2nd.

18   If either side is going to call -- has any objections by

19   November 16th, they should be filed.  After those objections

20   Ms. Wonneman will or will not modify her report.  And she'll

21   file the report by November the 28th.  Sentencing memoranda

22   are not required, but if either side desires to call any

23   witnesses, you should notify the Court and opposing counsel by

24   December 5th.

25           This regular sentencing order also provides that if

1  sentencing memorandum are filed, they should be filed by

2  December the 5th.  As I think you all know, Counsel, I'm not

3  really a stickler for that.  I don't want to get it two days

4  before, but if I get it the week before that is fine with me.

5  But this is a regular sentencing order we sign by agreement

6  with my colleagues and that will be filed immediately today as

7  well.

8          Now, we -- the defendant was in custody for a period

9  from March the 26th of 2021 to September 10 of 2021.  And

10 he'll get credit for that time in state custody.

11         MR. BARDOS:  Federal custody, Your Honor.

12         THE COURT:  I'm sorry, March 26th, 2021 to September

13 10th of 2021.

14         MR. BARDOS:  Federal custody.

15         THE COURT:  Federal custody, yes, I meant to say

16 federal custody.  In federal custody.  I'm sorry, Mr. Bardos,

17 you are correct.  For that period of time.  And he's been on

18 release since September 10th of last year.  And I'm afraid

19 that I've got some concerns here.  There have been two

20 incidents of apparent violation according to Troy Scott the

21 supervising U.S. probation officer who has been coordinating

22 with Senior U.S. probation officer Danny McMillan in the

23 United States District Court in the Northern District of

24 Georgia.

25         And as I understand it, there was a violation --

1   alleged violation on February 1 of this year and again on

2   April 9 of this year with respect to violating conditions of

3   release by making unauthorized stops while on approved travel

4   from Georgia to Maryland, and having law enforcement contact,

5   and actually testing positive for marijuana on occasion.  But

6   the -- he has not been violated up to this point.  It does

7   note, and this is the report I've gotten recently, as of

8   today, that there are still some charges, Georgia charges

9   remaining against him.  And there are offenses for simple

10  assault, hit and run, no insurance, et cetera.

11          What is the status of any Georgia -- you may be

12  seated for a minute, Mr. Ulysse.  What is the status of any

13  Georgia state cases against him Mr. Bardos.

14          MR. BARDOS:  Well, as I understand it, Your Honor,

15  they have not been pursued by the state of Georgia.  And from

16  what I understand, from my client, at least with regard to the

17  last two, it's a matter of accumulating funds to be able to

18  pay the fines that would take care of that.  So he has a job

19  now --

20          THE COURT:  What is he doing?

21          MR. BARDOS:  Pardon me.

22          THE COURT:  What is he doing.  What is his job?

23          MR. BARDOS:  He is canvassing for two of the senate

24  candidates in Georgia.

25          THE COURT:  He is doing what?

1          MR. BARDOS:  Canvassing for two of the senate

2    candidates in Georgia.

3          THE COURT:  All right.  And he's being paid for

4    that.

5          MR. BARDOS:  Yes, sir.

6          THE COURT:  Is he still living with and in the

7    custody of Deshawna Lynn Brown.

8          MR. BARDOS:  He is, Your Honor.  I've had

9    conversations with Mr. Luco, who has indicated that because

10   Mr. Ulysse is on electronic home monitoring, and actually is

11   on a GPS tracker, that Mr. Luco believes that Mr. Ulysse no

12   longer needs a third party custodian because electronic

13   monitoring would be sufficient for pretrial services.  But he

14   is still there.

15         THE COURT:  Well, I don't have any intentions of

16   lessening.

17         MR. BARDOS:  I wasn't asking --

18         THE COURT:  The question is whether or not they're

19   going to suffice.  The factors here are a little different

20   here under 18, United States Code, Section 3142 and 3143.

21   He's now pled guilty to two criminal charges.  And the burden,

22   as you well know, Mr. Bardos, shifts here in terms of whether

23   I can find by clear and convincing evidence that he's not

24   likely to flee or pose a danger to any other person of the

25   community.

1          I don't know about his danger to the community,

2     there's no indication of that.  But I had some strong concerns

3     whether he was even going to come here today or not, Mr.

4     Bardos.  We had a rather exciting week as to your client.

5          MR. BARDOS:  I understand that, Your Honor.

6          THE COURT:  And we had a representation by him that

7     he couldn't afford to come and we went to a great deal of

8     effort as a courtesy to him, to proceed by Zoom proceedings.

9     And then it turns out that then he decided he was not even

10    going to appear before me by Zoom proceeding, after the Court

11    took all these steps to accommodate him, and suggested that he

12    wanted to have another -- he wanted to have time to hire

13    another attorney, which as far as I'm concerned I interpret to

14    be stalling with respect to a trial date that's coming up in

15    four weeks and he's been on release for a year.  And suddenly

16    after a year he talks about wanting to find an attorney.  So

17    then we were going to schedule an attorney inquiry hearing.

18    And Mr. Bardos, you always -- you always give great

19    representation to your clients.  And you're one of the top

20    lawyers on our CJA committee as far as I'm concerned.

21         MR. BARDOS:  Thank you, Your Honor.

22         THE COURT:  And yet he decides he wants another

23    attorney.  I'm pretty confident that if I hadn't said if he

24    wasn't in here bodily by 2:30 today, I was going to issue an

25    arrest warrant and have the Marshals arrest him, I have some

1    doubts he was going to come.  And I don't think Mr. Ulysse

2    really gets it now in terms of how serious this is.  And this

3    is a totally different ball game now.  We have taken as great

4    of care as we can, and I've accepted his pleas of guilty.  And

5    he is facing a minimum of four years in federal prison.  And I

6    have some doubts about how much longer it would be in

7    everyone's interest for him to be out on release.  And I want

8    you to address with me how I can find by clear and convincing

9    evidence that he's not a risk of flight.

10             MR. BARDOS:  Well, Your Honor, there's no history

11   for Mr. Ulysse ever failing to show up in court.  He's always

12   come to court when he's supposed to.  The issues that you

13   mentioned with regard to the violations have nothing to do

14   with his fleeing or going anywhere.  The first one, just to

15   clarify, he was allowed to -- his son is very ill, his son

16   lives in Maryland.  And he was allowed by Judge Coulson to

17   travel to Maryland to see his son.  What he did was on his way

18   there, he took a five mile detour to pick up a friend, then

19   drove back, and then drove up to Maryland.  That was the

20   problem.  But he was on a GPS monitor at the time, so there's

21   no question where he was.  They know exactly where he was.  So

22   that wasn't anything related to flight, Your Honor.

23             As for this week, Judge, without violating any --

24             THE COURT:  Sure.  I'm not trying to go into your

25   communications with your client, I'm just trying to

1    summarize -- am I not correct what occurred this week?  We had

2    a rather exciting week on this case.  It's now Friday

3    afternoon.  He's finally here a few days after when he thought

4    he was going to plead guilty, after he represented he wasn't,

5    then he represented that he was going to plead guilty.  We had

6    a rather little bit of a yo-yo effect on this case.  Makes me

7    a little nervous, Mr. Bardos.

8            MR. BARDOS:  I understand that, Your Honor, hasn't

9    done a lot for me either.  But I can tell that you from my

10   understanding from Mr. Ulysse, his intention has been to plead

11   guilty.  He had conversations over the weekend, he had

12   conversations on Monday with his family.  And his family said,

13   look, we have property in Haiti, we have property in other

14   places, we could sell that property and get you a new lawyer.

15   It was never -- without being -- without being too conceited,

16   he's never had a problem with me.  His family thought, this is

17   a lot of time, it's very serious stuff.  Maybe we need to pay

18   a lawyer for you.  See if the judge will allow us to do that.

19   And he had to borrow from -- I'm not even sure where, but he

20   had to borrow to get here today.  We did ask if he could come

21   here, if he could appear by Zoom and the Court at that point

22   agreed.

23           THE COURT:  Previously, we were going to do this

24   earlier in the week.

25           MR. BARDOS:  Yes, sir.  But then this intervention

1    came from his family.  They tried to convince him he would get

2    a better situation with a different lawyer if they paid them.

3    Frankly, Your Honor, as CJA counsel I've heard that contention

4    before.  It doesn't offend me.

5            THE COURT:  I understand.

6            MR. BARDOS:  But I understand people feel that way.

7    And that's what happened.  So that's why we presented that on

8    Tuesday.  But his position with regard to his responsibility

9    for these actions has never changed.

10           THE COURT:  All right.

11           MR. BARDOS:  So I think he understands fully what

12    the seriousness is.  And, frankly, Your Honor, I think you

13    imparted that quite well on Tuesday.  But, so that was the

14    situation.  It wasn't that he wanted do, he didn't want to.

15    He never wavered.  His family was trying to say maybe we can

16    do something better for you, and that was how --

17           THE COURT:  Well, I'm not angry with him about that,

18    but it does pique my curiosity that he's been on release for a

19    year.  He was charged in this crime originally -- the

20    indictment in this case March 2021, a year and a half ago.

21    And suddenly a year and a half after he's charged, a year

22    after he's been placed on release, and suddenly he has to face

23    the music here, he starts seeming to dodge around the

24    calendar.  I was not going to permit it and I'm not going to

25    permit it.

1          So Mr. Delaney, do you have any reason to believe

2     that Mr. Ulysse risk of flight?

3          MR. DELANEY:  Your Honor, if I'm being consistent,

4     the government has always actually maintained that Mr. Ulysse

5     should be held pending trial, we lost that argument back in

6     September.

7          THE COURT:  I understand.  Well, this is now

8     different factors involved.

9          MR. DELANEY:  And I think Your Honor's right to

10    raise them and to have this conversation.  And I can certainly

11    jump up and down on the table and state all the reasons --

12         THE COURT:  Sure, I understand.

13         MR. DELANEY:  -- felt previously.  I will note for

14    the benefit of the record, he is here today as he said he

15    would be.  And if Your Honor's inclined, I would defer to the

16    Court.

17         THE COURT:  All right.  Mr. Ulysse, if you'll stand

18    please, sir.  As a result of this case you're going to go to

19    prison for at least four years, do you understand that?

20         THE DEFENDANT:  Yes, I do, sir.

21         THE COURT:  And you're going to be given credit for

22    time served for about six months in federal custody.  And I'm

23    not really pleased with the way this was handled today.  And

24    it's my view that you sent up warning signals to me about

25    this.  And I'm going to strongly consider -- I'm not going to

```
1    put you in custody today, Mr. Ulysse.  And I'm going to permit
2    you to return to Georgia under the same conditions as set by
3    Magistrate Judge Coulson, but I'm telling you if there is one
4    variation, if you go two blocks off the shortest route back to
5    Georgia and I hear there's a violation, I'm going to send out
6    the marshals to arrest you, do you understand that?
7              THE DEFENDANT:  I understand, sir.
8              THE COURT:  There's no wiggle room for mistakes
9    here, do you understand that?
10             THE DEFENDANT:  Totally understand, sir.
11             THE COURT:  All right.  And Mr. Bardos, I'm going to
12   give strong consideration to ordering him to voluntarily
13   surrender at some point in time before he's sentenced.  I
14   don't think we're going to wait until December.  I'm concerned
15   about this, I think that the temptations for him are too
16   great.  This is a massive financial fraud that's been alleged.
17   And I am -- I'm going to reflect on this.  I'm not going to
18   step him back today and the same conditions of release will
19   apply.  But the factors are totally different now that you've
20   come here under oath, pleading guilty to these offenses.
21             It's a different situation than was before my
22   colleague, Magistrate Judge Coulson, Mr. Ulysse.  And I have
23   seen in the past on some occasions do some really dumb things.
24   And they don't show up when they're supposed to.  And all the
25   sudden they multiply the effects here.  I can recall one
```

1    specific case of a man who committed bank robbery.  And he

2    pled guilty and he was on release.  And he was sentenced and I

3    still let him be on release.  And I gave him voluntary

4    surrender for the prison sentence, and on the day -- this is a

5    true story now, sir.

6          On the day he was to appear he totally panicked and

7    he and his girlfriend tried to rob a bank.  Like right out of

8    the movies, Bonnie and Clyde.  It turned out there was an

9    off-duty police officer in the bank.  And mercifully the only

10   person injured was the defendant.  He was shot.  And three or

11   four months later he appeared in front of me in a wheelchair.

12   And he wound up going to prison, I guess, I think it was 20

13   some years as opposed to six or seven, because he panicked one

14   afternoon.  So people do crazy things.

15         You are facing a minimum of four years in federal

16   prison and you're not getting any credit for time served right

17   now.  You get credit from March to September of 2021, but not

18   one minute of your time for home detention or anything else

19   has been credited toward that sentence over the last year.  Do

20   you understand that?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  And I'm trying to make sure we don't

23   have any major foul ups here?

24             THE DEFENDANT:  I wouldn't do --

25             THE COURT:  In terms of the danger to the community,

1   you endanger yourself and others, it concerns me.  And I'm

2   going to let these same conditions apply.  And I'm going to --

3   not going to make a finding by clear and convincing evidence

4   under 18, United States Code, Section 3143(a) and (b), but

5   I'm -- Mr. Bardos, I think it might be in his interest and

6   make everybody a lot more comfortable if we, in a very

7   civilized fashion, agree when he might want to surrender

8   before December.  And, quite frankly, maybe another facility

9   that could be designated for federal custody that would not

10   necessarily be the Chesapeake Detention Facility here in

11   Baltimore, there's limited space.  I could envision that he

12   could get credit for time served in federal custody to a

13   facility that could be designated in Georgia.  Could that not

14   be possible, Mr. Delaney?

15          MR. DELANEY:  I don't know, but I can certainly

16   ask.

17          THE COURT:  I would like you to ask if you would.

18   Try to find out.  We're not trying to put you in solitary

19   confinement or something, Mr. Ulysse, but I think that it

20   might be constructive under my consideration under factors

21   under Section 3143, it's very difficult for me to make a

22   really aggressive finding by clear and convincing evidence

23   that you're not a risk of flight or threat.  You're not a

24   threat to the community physically.

25          THE DEFENDANT:  I wouldn't --

1       THE COURT:  You may or may not be.  Now, Mr. Bardos

2  makes a good point, you did come here.  But I will tell you, I

3  have to have a rather specific conversation with you in terms

4  of what the realities were going to be if you weren't in this

5  courthouse at 2:30 today.  And I think that probably

6  registered with you finally.

7       THE DEFENDANT:  It was no doubt that I wouldn't be

8  in court, sir.  Not for a minute.  The only issue that we had

9  was the day that I was supposed to take the plea, like I said

10  I spoke to my family the day before --

11       THE COURT:  I understand.

12       THE DEFENDANT:  And I have like ten people in my ear

13  saying don't do it, don't do it, don't do it.  So I spoke to

14  Mr. Bardos.  And that's it.  Literally besides that, I'm not

15  going to do anything that's going to make my time, worse.  You

16  know.

17       THE COURT:  All right.  Well, we'll -- I'm going to

18  continue the same conditions of release.  But they're subject

19  to review.  And I have the jurisdiction to review those

20  conditions at any time.

21       Correct, Mr. Delaney?

22       MR. DELANEY:  Correct.

23       THE COURT:  Correct, Mr. Bardos.

24       MR. BARDOS:  Yes, sir.

25       THE COURT:  And I think that it might be -- I think

1    I feel a lot more comfortable if we decide when you might want

2    to surrender.  And believe me, if you were to surrender to

3    federal custody, not state custody, and you would get credit

4    for the time served before you come here in sentencing for the

5    final sentencing.  I think it might be a step in the better

6    direction for you.  So that's where we're going to leave this

7    for now.

8           Anything further from the point of view of the

9    government, Mr. Delaney?

10          MR. DELANEY:  No.  Thank you, Your Honor.

11          THE COURT:  All right.  Thank you.

12          Mr. Bardos, anything further from your point of

13   view?

14          MR. BARDOS:  No.  Thank you, Judge.

15          THE COURT:  All right.  Thank you, Mr. Ulysse, I

16   want you to understand I'm speaking just straight to you, so

17   you understand where I'm coming from, do you understand?

18          THE DEFENDANT:  Yes.

19          THE COURT:  You have a good lawyer there.  He's

20   highly respected by the Court.  And everything is very

21   civilized here.  I'm not going to have you put in handcuffs

22   and taken through that door over here, but I'm going to tell

23   you, we didn't start right at 2:30 today and no one was sure

24   where you were --

25          THE DEFENDANT:  I was here at 12:30.

1        THE COURT:  All I know is the people talking to me

2   didn't know where you were in the courthouse, okay.  You were

3   here, and that's fine.  I'm not angry with you.  Do I seem

4   like I'm angry?  I'm not yelling at you?

5        THE DEFENDANT:  No, sir.

6        THE COURT:  I'm just trying to tell you these are

7   serious matters, you have to focus.  You've had the luxury of

8   being out for a year now waiting for these charges to come to

9   trial.  This case is going to trial in October, without any

10  question as to the other two defendants.  No postponements.

11  That's all there is to it.  So the time is up now.  And I

12  think you need to get focused.  And I think you are focused,

13  but I want you to understand, in the spirit which is intended,

14  I'm trying to make sure that you don't necessarily jeopardize

15  your own conditions and make it even worse than it is for you.

16  So do you understand?

17        THE DEFENDANT:  Yes, sir, I do.

18        THE COURT:  With that this court stands adjourned

19  for the day.  Thank you all very much.

20        (The proceedings were concluded at 4:29 p.m.)

21

22        I, Christine Asif, RPR, FCRR, do hereby certify that
    the foregoing is a correct transcript from the stenographic
    record of proceedings in the above-entitled matter.

23

24        _____/s/_____
                    Christine T. Asif
                  Official Court Reporter

25

< Dates >.
April 2020
  56:21,
  59:15.
April 9 64:2.
August 16th
  58:16.
August 2019
  56:3.
August 26th
  58:21.
December 19
  62:15.
December 5th
  62:24.
February 1
  64:1.
January 18th
  54:14.
January 2018
  33:18, 51:5,
  56:3.
January 8th
  53:17.
January 8th,
  2019 54:1.
January 9th
  54:9.
January 9th,
  2019 54:23.
July 2020 10:7,
  11:9,
  34:10.
July 22 7:15,
  7:17, 30:4.
July 22nd
  21:13,
  23:1.
March 19th
  55:21.
March 2019
  55:13.
March 2021
  69:20.
March 26th,
  2021 63:12.
March 4th
  28:6.
November 16th
  62:19.

November 2019
  51:6.
November 2020
  10:7, 34:10,
  56:22,
  59:15.
October 25th
  46:2.
September 10
  63:9.
September 20
  29:5.
September 20,
  '21 29:1.
September 26
  12:4.
September 26th
  59:2.
$1,834,545
  56:6.
$100 37:3.
$2,420,280
  56:5.
$2,703,520
  37:13.
$2.7 37:12.
$20,000
  55:19.
$250,000 36:21,
  36:25.
$440 58:17.
$500 58:22.
$618,767 37:15,
  59:18.
$9,000 54:7,
  54:20,
  54:22.
$9,400 53:24,
  55:2.
$9,800 55:7.
$980 59:3.
(2 2:1.
(258 2:1.
.
.
< 1 >.
1 1:37, 7:13,
  8:10, 12:1,
  15:13, 21:1,
  21:4, 24:14,

24:24, 26:14,
  27:3, 31:18,
  36:18, 50:4,
  50:19, 50:24,
  56:14, 60:7,
  60:22,
  61:23.
10 42:7.
10th 28:17,
  28:24, 29:6,
  29:7, 29:11,
  29:14, 63:13,
  63:18.
11 15:3, 15:11,
  15:18, 16:22,
  30:12, 41:21,
  42:14.
11(c)(1)(c
  15:21, 16:22,
  19:2.
11:00 62:15.
11th 55:3,
  58:6.
12 44:17, 46:9,
  46:23.
122 5:22.
12:30 75:25.
12c 45:6,
  45:19.
12th 55:9.
13 37:9.
1343 21:10,
  62:2.
1349 21:8,
  61:24.
14 36:7.
143 59:16.
16 30:17.
17 39:11.
18 21:8, 21:9,
  36:7, 40:8,
  61:24, 62:1,
  65:20,
  73:4.
19 36:7,
  36:9.
1984 24:12.
19th 5:23.
.
.

< 2 >.
2 25:2, 33:19,
  36:22.
20 28:13,
  36:19, 36:23,
  41:17, 43:24,
  72:12.
2005 39:16,
  39:24.
2007 40:19.
2019 33:18,
  53:17, 54:9,
  54:14, 55:3,
  55:9,
  55:21.
2020 9:4, 11:9,
  12:4, 58:5,
  58:6, 58:16,
  58:21, 59:2,
  59:7.
2021 9:19,
  28:6, 28:8,
  28:17, 28:21,
  28:25, 29:6,
  63:9, 63:13,
  72:17.
2022 1:18,
  62:15.
20th 58:5.
21 28:13.
21-0054 14:2,
  21:3.
21-0054-RDB
  1:9.
21-054 2:5.
21-54-RDB
  24:14.
21201 1:31.
21202 1:38.
22-0335 2:7,
  8:10.
23 8:3,
  32:11.
23rd 7:18.
25 23:14,
  59:11.
25th 45:24.
26 21:20, 22:1,
  22:9,
  41:16.

26th 28:8,
  28:21,
  63:9.
27 16:10,
  17:19, 21:20,
  22:1, 22:9,
  22:10,
  41:16.
28 16:10,
  17:19, 21:20,
  22:1, 22:9,
  22:10,
  41:16.
28th 62:21.
29 16:10,
  17:19,
  22:9.
2:30 6:5, 6:6,
  6:9, 66:24,
  74:5,
  75:23.
2nd 62:17.
.
< 3 >.
3 36:16.
30th 28:11,
  59:7.
3142 65:20.
3143 65:20,
  73:21.
3143(a 73:4.
31st 28:13.
3553 40:8.
36 1:30.
38 24:10.
3b1.1(c 22:3.
.
.
< 4 >.
48 15:20,
  15:24, 16:3,
  16:14, 17:1,
  17:9, 17:13,
  17:14, 19:5,
  19:20, 32:14,
  32:16, 32:19,
  39:9, 40:6,
  41:22, 42:15,
  43:15, 43:21,

  44:18,
  44:21.
4:29 76:20.
.
.
< 5 >.
5 39:13,
  45:21.
50 44:5.
54 44:5.
5th 47:17,
  63:2.
.
.
< 6 >.
6 39:13,
  40:9.
60 43:21.
.
.
< 7 >.
7 12:1, 25:2,
  41:10,
  41:13.
79 53:18.
7d 21:13,
  22:16.
.
.
< 8 >.
8 12:3,
  35:11.
83 56:4.
83-year-old
  55:14.
87 54:14.
89 54:2.
.
.
< 9 >.
9 42:2.
904 1:37.
_____/s/___
_____
  76:26.
.
.
< A >.
A.C. 59:6.
a.m. 62:15.

abandonment
  36:8.
abide 32:13.
able 5:10,
  5:20, 35:10,
  37:19, 42:25,
  49:12, 49:13,
  64:17.
abolished
  43:19.
above 12:18,
  17:13, 42:15,
  43:15.
above-entitled
  76:24.
accept 2:10,
  6:18, 15:13,
  15:16, 18:13,
  19:4, 32:19,
  35:13, 49:17,
  61:6.
acceptance
  50:21,
  56:14.
accepted 61:21,
  67:4.
access 45:11.
accessible
  11:7.
accident 51:24,
  55:16.
accommodate
  66:11.
according
  63:20.
account 12:22,
  40:3, 40:14,
  54:12,
  55:11.
accumulating
  64:17.
accurate 60:5,
  60:11.
achieve 41:2.
across 52:24.
Act 14:3,
  20:22, 45:8,
  45:14.
actions 69:9.
activities

53:5,
  53:13.
Actually 11:15,
  32:1, 64:5,
  65:10,
  70:4.
Adam 1:42, 4:2,
  4:7.
added 20:19.
addiction
  26:4.
additional 7:8,
  52:18, 55:2,
  55:5, 55:7.
additions
  60:2.
address 41:5,
  45:1, 52:13,
  53:22, 53:25,
  54:5, 54:8,
  54:20, 54:22,
  55:2, 55:8,
  55:12, 55:17,
  55:19,
  67:8.
addresses
  10:25, 50:23,
  51:16, 51:18,
  52:25, 53:3,
  54:13,
  57:18.
addressing
  2:25.
adjourned
  76:18.
adjudged
  61:22.
adjudicated
  34:21.
administer
  24:2.
advice 27:6,
  61:17.
advised 6:8,
  30:2.
advises 5:10.
advisory 22:3,
  39:25,
  43:1.
afford 5:20,

6:2, 27:11,
66:7.
afforded
62:11.
afraid 63:18.
afternoon 2:3,
3:6, 4:17,
4:24, 4:25,
42:18, 68:3,
72:14.
afterwards
44:14.
age 24:9.
agencies 10:21,
10:24, 11:20,
45:11, 57:14,
57:16, 57:24,
58:12.
agency 4:3,
4:4.
Agent 1:41,
1:42, 4:5,
4:7.
aggressive
73:22.
ago 7:5, 7:7,
15:4, 23:14,
28:6,
69:20.
agree 47:5,
73:7.
agreed 68:22.
agreeing
39:9.
alcoholic 14:8,
26:7.
allegation
13:1.
alleged 10:12,
10:17, 11:2,
11:21, 64:1,
71:16.
allow 68:18.
allowed 42:19,
67:15,
67:16.
almost 59:23.
already 25:14,
38:17, 49:23,
56:19.

although
7:16.
amend 12:13.
Amendment
47:17.
America 1:5,
9:21, 9:23,
12:22.
American 35:2,
35:6, 35:8,
35:9,
45:10.
ammunition
34:24,
36:15.
amount 37:3,
56:1, 56:5,
59:19.
analysis
39:10.
angry 69:17,
76:3, 76:4.
answer 17:17,
17:18, 25:14,
25:18.
anticipated
16:9, 22:8,
41:14,
41:18.
anybody 33:6.
apart 23:22,
40:25.
apparent
63:20.
apparently
14:17,
42:9.
appeal 27:1,
44:16, 44:17,
44:19, 44:20,
44:21, 45:1,
49:11, 49:12,
49:13.
appeals 40:4.
appear 6:7,
6:9, 27:11,
66:10, 68:21,
72:6.
appearance
28:7.

Appearances
1:23.
appeared 28:6,
28:21, 54:6,
72:11.
appearing
23:16.
applicability
19:3.
applicants
10:25,
57:17.
application
10:2, 58:19,
58:24,
59:5.
applications
10:14, 10:21,
11:1, 11:3,
57:6, 57:18,
57:19, 57:22,
59:17.
applied
39:25.
apply 10:4,
40:2, 71:19,
73:2.
appoint 14:2.
appointed
13:12, 14:1,
25:22.
appointment
4:23.
appropriate
15:5,
15:19.
appropriately
17:6.
approved 9:20,
57:24,
64:3.
April 9:19.
areas 2:16.
argue 17:12,
17:13, 19:13,
19:14.
argument
70:5.
around 9:4,
45:25, 46:2,

69:23.
arraignment
14:15, 14:17,
14:18.
arrest 66:25,
71:6.
arrested 20:1,
53:21.
artifice 33:23,
34:7, 34:12,
50:7.
Asif 1:45, 3:1,
76:22,
76:27.
aspect 13:5.
assault
64:10.
assessment
37:2.
assigned 5:6,
5:8, 43:3.
assist 53:6,
62:5.
Assistance 9:2,
9:8, 9:9,
11:14, 11:16,
47:9.
Assistant 7:6,
30:5,
50:15.
associated
49:20.
assuming 7:9.
assurances
31:2.
assured
32:15.
ATM 12:22,
58:18, 58:23,
59:3.
Attachment
50:22, 56:9,
59:23.
attachments
30:11, 30:14,
31:7,
31:11.
attempt 33:22,
50:1.
attempted

10:12,
57:5.
attempting
12:5.
attend 2:7.
attendance
48:21.
Attorney 1:29,
3:14, 6:1,
6:2, 6:4,
6:8, 13:7,
26:22, 30:5,
37:21, 45:12,
50:15, 53:19,
62:7, 66:13,
66:16, 66:17,
66:23.
AUSA 1:27,
1:28, 3:11,
3:22, 3:24.
authorize
10:2.
automatically
37:3.
aware 11:22,
58:13,
61:13.
.
.
< B >.
back 38:16,
67:19, 70:5,
71:4,
71:18.
bail 20:2,
51:25, 52:20,
53:21, 54:4,
54:6.
Bainbridge
54:3.
balance 44:1.
ball 67:3.
Baltimore 1:19,
1:31, 1:38,
6:3, 12:23,
53:22, 53:25,
54:5, 54:8,
54:10, 54:20,
55:10, 58:18,
59:4,

73:11.
Bank 9:20,
9:22, 12:22,
72:1, 72:7,
72:9.
bar 25:21.
Barron 13:7.
based 9:24.
bases 61:19.
basic 34:15,
50:11.
basically 17:7,
27:24,
28:21.
basis 10:3,
22:20, 39:8,
50:18,
50:21.
became 34:2,
50:3.
become 9:18,
37:20.
beg 29:22.
began 48:7.
beginning 9:4,
16:3.
behalf 3:7,
4:16, 48:22,
49:6,
62:11.
behind 2:22,
3:3.
believe 5:9,
5:15, 8:4,
20:18, 23:2,
28:17, 28:24,
29:6, 43:3,
45:24, 70:1,
75:2.
believes
65:11.
below 17:9,
32:13, 32:16,
32:18, 39:9,
40:6,
43:21.
bench 2:20.
Bender 1:41,
4:2, 4:6.
beneficiaries

8:25.
benefit 50:25,
56:19, 60:12,
70:14.
benefits 8:25,
9:7, 9:13,
9:18, 10:2,
10:4, 10:10,
10:15, 10:18,
10:24, 11:3,
11:18, 35:10,
35:12, 56:11,
56:24, 57:7,
57:11, 57:16,
58:10, 59:15,
59:19.
besides
74:14.
better 69:2,
69:16,
75:5.
beverage 14:8,
26:7.
beyond 46:19,
48:13,
48:16.
birth 10:22.
births 57:15.
bit 2:14,
68:6.
blocks 71:4.
Boardman
28:12.
bodily 66:24.
Bonnie 72:8.
Booker 39:17,
40:20.
boosted 2:21,
3:8.
booster 2:21.
born 24:11.
borrow 68:19,
68:20.
bound 16:17,
18:4, 40:1,
41:7.
Brown 65:7.
burden 48:12,
48:14, 48:16,
65:21.

Bureau 4:6.
business
9:10.
.
.
< C >.
c)(1)(c 18:6.
calculate
18:25,
41:18.
calculation
17:3, 17:4,
17:17, 18:7,
21:15, 21:18,
21:23, 40:23,
41:4, 41:7,
41:24.
calculations
41:12.
calendar
69:24.
California
10:19, 53:19,
57:13,
59:6.
call 47:19,
47:20, 48:25,
50:15, 52:17,
54:15, 62:18,
62:22.
called 54:24,
55:4.
caller 53:20,
53:22, 54:5,
54:17,
55:16.
calling 2:4.
calls 16:3,
52:11.
candidates
64:24,
65:2.
Canvassing
64:23,
65:1.
capable 9:15,
61:12.
car 51:24,
52:6.
card 9:23,

10:3, 11:16,
12:24, 58:9,
58:17, 58:18,
58:22, 58:23,
59:3, 59:4.
cards 10:24,
11:5, 11:6,
11:11, 11:24,
57:16, 57:20,
58:2, 58:7,
58:15, 59:10,
59:11.
care 64:18,
67:4.
carefully
6:15.
carriers
51:11.
cases 15:6,
26:25,
64:13.
cash 51:10,
52:3, 52:12,
52:16, 52:18,
52:25, 53:7,
53:9, 53:15,
53:24, 54:7,
54:10, 54:20,
54:22, 55:9,
55:19, 55:24,
56:1.
Category 17:20,
18:24,
19:15.
cause 7:19,
7:24, 7:25,
8:3, 12:19,
33:25.
caused 11:4,
34:14, 56:4,
57:2,
57:20.
certain 9:16,
12:21, 34:22,
35:9, 36:5,
36:6, 36:8,
38:13, 41:11,
45:10,
45:21.
certainly 3:21,

32:13, 70:10,
73:15.
certify
76:22.
cetera 64:10.
changed 43:9,
69:9.
changes 23:1.
characteristics
40:10.
charge 7:4,
7:20, 7:24,
8:7, 15:3,
20:10, 37:13,
37:14, 41:15,
41:16, 47:6,
49:11, 49:24,
55:5, 60:7.
charged 9:4,
10:5, 10:7,
11:8, 11:16,
11:25, 12:3,
21:2, 24:13,
24:18, 33:11,
34:1, 34:6,
34:9, 36:19,
69:19,
69:21.
charges 6:24,
7:7, 8:16,
8:22, 13:17,
13:21, 15:24,
16:10, 23:22,
26:19, 26:22,
31:14, 35:25,
46:5, 46:9,
46:17, 46:18,
49:13, 59:24,
60:6, 61:13,
61:14, 62:14,
64:8, 65:21,
76:8.
charging 8:8,
21:6, 21:9,
36:22, 60:25,
61:2,
61:25.
Charles 1:30,
55:14.
Chesapeake

73:10.
chief 8:2.
choose 47:22.
Christine 1:45,
3:24, 76:22,
76:27.
circumstances
18:18, 19:4,
19:19, 32:18,
40:11.
citizen 35:2,
35:6, 35:8,
35:9.
citizens
45:10.
civil 34:22.
civilized 73:7,
75:21.
CJA 66:20,
69:3.
claim 9:12,
9:20.
claimant 9:23,
9:24, 10:4.
claimed 51:17,
54:16, 54:18,
54:24,
55:4.
claiming 10:14,
52:18, 53:19,
54:17, 55:15,
57:7.
claims 9:13,
10:18, 11:20,
11:23, 57:11,
58:3, 58:12,
58:14.
clarify
67:15.
clear 19:10,
65:23, 67:8,
73:3,
73:22.
CLERK 7:7,
23:5, 23:7,
24:3, 30:6,
49:1.
client 26:13,
31:8, 35:2,
64:16, 66:4,

67:25.
clients
66:19.
Clyde 72:8.
co-conspirator
55:24.
Co-conspirators
51:9, 51:20,
52:1, 52:3,
52:7, 52:12,
52:17, 52:21,
52:23, 53:8,
53:10, 53:14,
57:2, 57:4,
57:10, 57:20,
58:1.
co-defendant
46:2.
Code 21:8,
61:24, 62:1,
65:20,
73:4.
colleague
71:22.
colleagues
63:6.
collectively
51:18.
college
25:24.
comfortable
73:6, 75:1.
coming 6:16,
20:4, 28:10,
66:14,
75:17.
commerce
12:20.
commercial
51:11.
commit 21:5,
21:7, 33:13,
49:24, 51:8,
60:16,
61:23.
commitment
33:2.
committed 8:4,
34:11,
72:1.

committee
  66:20.
commonly
  9:13.
communications
  12:21,
  67:25.
community 8:2,
  65:25, 66:1,
  72:25,
  73:24.
compel 48:21,
  49:4.
Compensation
  9:9, 11:13,
  11:14, 11:15,
  58:9, 58:20,
  58:25.
competent
  26:13, 61:12,
  61:17.
complete 31:8,
  31:12.
completing
  11:2,
  57:18.
compliance
  38:13.
computer
  36:11.
computers
  9:15.
conceal 52:7,
  52:23.
conceited
  68:15.
concern
  17:17.
concerned
  16:25, 23:15,
  66:13, 66:20,
  71:14.
concerning
  50:16.
concerns 63:19,
  66:2, 73:1.
concluded
  76:20.
concludes
  15:13.

conditions
  2:11, 6:16,
  6:19, 23:17,
  29:10, 29:15,
  38:13, 38:15,
  64:2, 71:2,
  71:18, 73:2,
  74:18, 74:20,
  76:15.
conduct 14:14,
  39:10,
  56:6.
conducted
  11:11, 29:9,
  58:6, 59:9.
confident
  66:23.
confinement
  73:19.
confirm
  20:20.
confusion 2:12,
  8:20.
Congress
  45:9.
conjecture
  17:2.
Connecticut
  54:15.
connection 8:9,
  51:24.
connections
  51:14.
consent 5:21,
  13:22.
consequences
  38:23, 39:2,
  61:14.
consider 40:2,
  41:8, 48:10,
  70:25.
consideration
  40:24, 71:12,
  73:20.
considered
  16:11,
  40:7.
consistent
  25:1, 70:3.
conspiracy

21:5, 21:7,
  33:13, 34:2,
  36:18, 37:13,
  41:15, 49:24,
  50:4, 51:12,
  51:17, 53:15,
  53:18, 54:2,
  55:13, 55:22,
  57:8, 60:7,
  61:23.
conspired 51:7,
  56:23.
constitutes
  13:4.
Constitution
  47:18.
constitutional
  39:23.
constitutionali
  ty 39:18.
constructive
  73:20.
contact 9:11,
  64:4.
contacted
  53:18, 54:2,
  55:13.
contained
  50:22,
  57:14.
containing
  53:24, 54:7,
  54:22,
  55:19.
contends 53:4,
  53:12,
  53:13.
contention
  69:3.
context 40:1.
continue 10:3,
  74:18.
continued
  10:4.
contract
  9:21.
conversation
  70:10,
  74:3.
conversations

65:9, 68:11,
  68:12.
convicted
  35:16, 35:22,
  38:2,
  46:24.
conviction
  13:2, 35:19,
  35:24,
  36:1.
convictions
  35:13.
convince
  69:1.
convincing
  65:23, 67:8,
  73:3,
  73:22.
coordinating
  63:21.
Copperthite
  6:7, 6:10,
  28:8.
copy 22:24,
  22:25, 26:17,
  30:10, 32:10,
  43:5, 43:7.
Correct 4:21,
  5:17, 5:18,
  13:23, 15:8,
  15:9, 16:9,
  18:20, 20:11,
  21:20, 22:22,
  23:5, 23:7,
  25:4, 29:12,
  30:24, 31:20,
  31:22, 42:9,
  42:11, 45:2,
  45:4, 56:16,
  56:17, 63:17,
  68:1, 74:21,
  74:22, 74:23,
  76:23.
correction
  16:2.
correctly 6:11,
  7:21, 38:5.
corruption
  3:11.
cost 49:3.

Coulson 29:10,
   29:14, 67:16,
   71:3,
   71:22.
Counsel 3:4,
   3:10, 15:6,
   28:10, 47:9,
   49:2, 61:17,
   62:23, 63:2,
   69:3.
Count 7:13,
   21:1, 21:4,
   24:14, 24:15,
   24:19, 24:24,
   26:14, 27:3,
   36:18, 36:22,
   37:3, 46:24,
   47:1, 50:4,
   50:19, 50:24,
   56:14, 60:7,
   60:22, 60:24,
   61:23.
counted 53:9,
   53:10.
country
   52:24.
counts 22:12,
   25:2, 25:7,
   47:2.
County 59:9.
course 44:7.
court-appointed
   4:21, 28:10,
   49:2.
courtesy
   66:8.
courthouse
   2:17, 6:5,
   74:5, 76:2.
courtroom 6:9,
   35:24, 49:4,
   49:6.
courtrooms
   2:17.
courts 40:4.
COVID-19 9:5.
Covington
   51:4.
crazy 72:14.
create 9:22.

credit 28:19,
   38:17, 44:6,
   44:8, 63:10,
   70:21, 72:16,
   72:17, 73:12,
   75:3.
credited
   72:19.
Crime 7:8,
   7:25, 20:22,
   35:17, 35:23,
   51:25, 52:7,
   52:23, 60:16,
   69:19.
crimes 40:13,
   51:14.
cross-examinati
   on 47:24.
cross-examine
   47:10.
curiosity
   69:18.
current 7:13.
currently
   26:6.
Cusson 1:28,
   3:12, 3:13,
   3:17, 3:19,
   3:22, 3:24,
   43:5.
custodian
   65:12.
custody 28:13,
   28:18, 28:20,
   28:22, 63:8,
   63:10, 63:11,
   63:14, 63:15,
   63:16, 65:7,
   70:22, 71:1,
   73:9, 73:12,
   75:3.
.
.
< D >.
damages 52:20,
   55:18.
danger 65:24,
   66:1,
   72:25.
Danny 63:22.

date 20:4,
   34:8, 57:15,
   62:14,
   66:14.
dated 21:13.
dates 10:22,
   33:17.
day 15:23,
   27:16, 72:4,
   72:6, 74:9,
   74:10,
   76:19.
days 2:13,
   44:5, 63:3,
   68:3.
deal 66:7.
debit 9:23,
   10:3, 10:24,
   11:5, 11:11,
   11:16, 11:24,
   12:24, 57:16,
   57:20, 58:2,
   58:7, 58:9,
   58:14, 58:17,
   58:18, 58:22,
   58:23, 59:2,
   59:4, 59:10,
   59:11.
December 40:19,
   63:2, 71:14,
   73:8.
decide 18:1,
   47:1, 48:3,
   75:1.
decided 40:19,
   66:9.
decides
   66:22.
decline
   47:14.
deducted
   37:6.
defendants
   3:21, 20:4,
   21:2,
   76:10.
defense 47:9,
   47:15.
defer 70:15.
definite 17:3,

17:4.
definition
   16:24.
defraud 11:9,
   12:5, 33:23,
   34:7, 34:13,
   50:2, 50:7,
   51:19.
Delaney 3:7,
   3:9, 13:6,
   13:14, 14:12,
   14:21, 15:7,
   16:1, 16:25,
   18:24, 19:23,
   21:19, 23:1,
   25:4, 30:5,
   31:20, 36:12,
   38:7, 42:9,
   43:5, 44:24,
   50:16, 51:2,
   59:21, 60:17,
   70:1, 73:14,
   74:21,
   75:9.
Delaware
   53:1.
deletion 39:19,
   39:22.
deliberations
   48:7.
delighted
   51:2.
delivered 53:7,
   53:11, 54:11,
   55:10.
deliveries
   53:4.
delivery
   52:13.
Department 4:7,
   9:11, 9:19,
   9:21, 9:25,
   10:1, 10:19,
   10:20, 10:23,
   11:19, 12:6,
   12:7, 12:11,
   12:16, 20:15,
   45:15, 45:16,
   57:12, 57:13,
   57:23, 58:11,

58:25, 59:6,
  59:9.
dependant
  22:1.
derived 13:4.
described
  52:4.
Deshawna
  65:7.
designated
  73:9,
  73:13.
desires
  62:22.
desk 23:5,
  30:6, 30:7.
Detention 28:9,
  28:11, 29:8,
  72:18,
  73:10.
determination
  7:19, 7:23,
  7:25, 22:2.
determine 2:10,
  7:10, 8:3,
  17:19, 17:20,
  17:22,
  42:25.
determined
  19:15, 23:21,
  41:7.
determines
  18:23.
determining
  42:4.
detour 67:18.
Development
  10:20, 57:13,
  59:6.
devices 9:15,
  59:13.
devise 56:23.
devised 10:9.
different
  19:14, 29:16,
  43:13, 56:4,
  65:19, 67:3,
  69:2, 70:8,
  71:19,
  71:21.

difficult
  73:21.
directed 52:12,
  52:16, 53:4,
  53:13, 53:14,
  55:21, 55:23,
  56:4.
direction
  75:6.
disbursed
  10:24, 11:18,
  57:16,
  58:11.
disbursement
  57:24.
discovery
  45:11.
discretion
  2:18.
discuss
  30:20.
discussed
  26:21,
  26:24.
dismissed
  25:7.
dismissing
  25:2.
displayed
  11:17,
  58:10.
dispute 41:12,
  42:9.
dissatisfaction
  27:14.
distribute
  53:15.
distributed
  53:14.
District 1:1,
  1:2, 10:8,
  11:10, 28:12,
  51:6, 56:22,
  63:23.
DLLR 12:6,
  12:11.
docket 5:12,
  5:13,
  28:15.
document

32:6.
dodge 69:23.
doing 22:13,
  64:20, 64:22,
  64:25.
DOL/OIG 1:42.
dollars 51:10,
  52:1,
  52:21.
done 29:20,
  68:9.
door 75:22.
doubt 46:19,
  48:13, 48:17,
  74:7.
doubts 67:1,
  67:6.
down 2:19,
  2:20, 2:25,
  5:4, 7:7,
  17:14, 23:5,
  70:11.
driver 59:7.
drove 67:19.
drugs 14:8,
  26:4, 26:7,
  52:5.
due 62:17.
dumb 71:23.
During 37:18,
  52:11.
.
.
.
< E >.
E. 1:37.
ear 74:12.
earlier 5:15,
  12:8,
  68:24.
easier 3:1.
effect 62:16,
  68:6.
effectively
  39:25.
effects
  71:25.
effort 31:2,
  66:8.
either 7:25,
  16:10, 18:4,

21:20, 22:19,
  27:2, 41:15,
  43:8, 43:9,
  53:2, 62:18,
  62:22,
  68:9.
elder 50:23,
  56:2, 60:8.
elderly 19:25,
  51:9,
  51:20.
elected
  47:15.
electronic
  9:15, 10:2,
  59:13, 65:10,
  65:12.
electronically
  9:14.
elements 33:16,
  33:19, 34:3,
  34:5, 34:11,
  34:15, 49:22,
  50:6, 50:11,
  61:20.
eligibility
  9:6.
eligible 8:25,
  9:18.
elsewhere 10:8,
  11:6, 11:10,
  51:7, 56:22,
  57:21,
  58:2.
embarrassing
  52:10.
employee 9:10,
  9:16.
Employment
  10:20, 57:13,
  59:6.
end 15:15,
  15:17, 16:4,
  16:7, 16:18,
  16:24, 17:2,
  18:3, 19:1,
  19:13,
  33:3.
endanger
  73:1.

enforce
    34:15.
enforcement
    64:4.
English 17:8,
    18:17,
    26:1.
enter 6:10,
    37:9.
entered 2:9,
    33:21,
    49:25.
entering 49:17,
    61:12.
entire 8:18.
entitled 10:16,
    57:9.
envision
    73:11.
equipment
    36:12.
error 12:10.
Esquire 1:35.
essential
    61:20.
essentially
    8:8, 10:6,
    40:5, 41:12,
    59:22.
establish
    50:18.
estimate
    43:13.
et 64:10.
Evelyn 1:28,
    3:11.
events 20:8.
everybody
    73:6.
everyone 2:3,
    67:7.
everything
    28:1,
    75:20.
evidence 26:25,
    48:3, 48:8,
    48:9, 65:23,
    67:9, 73:3,
    73:22.
exact 37:13,

43:13.
exactly 6:19,
    21:21,
    67:21.
example 35:11,
    44:6.
exception
    2:17.
exciting 66:4,
    68:2.
execute 12:5,
    33:22, 50:1,
    56:24,
    57:1.
executed
    10:9.
executing
    12:5.
execution 56:2,
    59:14.
Exhibit 15:13,
    31:18.
expanded 9:5.
expenses 51:14,
    52:20.
explain 19:19,
    21:17,
    43:20.
extent 19:3.
extremely
    52:4.
.
.
< F >.
F.W. 55:5.
face 35:18,
    35:25, 36:4,
    69:22.
Facility 73:8,
    73:10,
    73:13.
facing 67:5,
    72:15.
fact 2:21,
    32:13, 33:4,
    33:10, 60:16,
    61:19.
factor 42:4.
factors 18:21,
    40:7, 40:10,

40:13, 40:25,
    41:8, 65:19,
    70:8, 71:19,
    73:20.
facts 48:4,
    50:17, 50:23,
    56:12, 60:3,
    60:6.
factual 50:18,
    50:21, 56:13,
    56:15.
failing
    67:11.
fair 17:14.
false 10:11,
    10:13, 11:3,
    12:17, 23:23,
    25:16, 33:24,
    34:8, 50:2,
    50:7, 51:12,
    52:8, 57:6.
falsely 25:14,
    51:17, 51:22,
    54:16, 54:18,
    54:24,
    55:4.
family 20:1,
    27:18, 68:12,
    68:16, 69:1,
    69:15,
    74:10.
far 10:6,
    16:25, 25:23,
    66:13,
    66:20.
fashion 73:7.
fault 9:3.
FBI 1:41,
    45:16.
FCRR 1:45,
    76:22.
Federal 4:6,
    8:24, 9:5,
    9:8, 11:13,
    15:22, 28:19,
    28:22, 35:12,
    39:6, 39:12,
    39:24, 40:1,
    40:21, 43:19,
    44:1, 44:12,

45:10, 57:25,
    58:9, 63:11,
    63:14, 63:15,
    63:16, 67:5,
    70:22, 72:15,
    73:9, 73:12,
    75:3.
Fedex 52:14,
    53:24, 54:11,
    54:20,
    54:22.
feel 69:6,
    75:1.
fees 51:25.
felony 34:18,
    35:13.
felt 70:13.
few 2:13, 7:7,
    21:4, 49:17,
    50:14,
    68:3.
figure 16:12,
    21:23.
file 11:23,
    45:14, 45:17,
    58:14, 62:9,
    62:21.
filed 2:6,
    5:23, 7:5,
    7:17, 8:10,
    14:23, 62:19,
    63:1, 63:6.
final 17:17,
    17:18, 22:9,
    75:5.
finally 6:4,
    68:3, 74:6.
Financial 9:2,
    37:20, 56:7,
    71:16.
find 14:7,
    47:2, 47:3,
    65:23, 66:16,
    67:8,
    73:18.
finding 49:12,
    61:9, 73:3,
    73:22.
finds 16:19,
    61:16.

fine 4:1,
  20:12, 20:21,
  32:3, 36:20,
  36:25, 54:24,
  63:4, 76:3.
fines 52:20,
  64:18.
firearm 34:23,
  36:15, 42:19,
  42:23.
First 5:16,
  7:4, 22:13,
  33:13, 40:23,
  43:16, 44:7,
  67:14.
five 43:22,
  46:3, 56:7,
  67:18.
five-year 44:6,
  44:8.
flee 65:24.
fleeing
  67:14.
flight 67:9,
  67:22, 70:2,
  73:23.
Floor 1:30.
Florida 8:23,
  51:4, 53:1.
focus 76:7.
focused
  76:12.
force 10:20,
  10:24, 33:6,
  57:23.
Forcina 20:9.
foregoing
  76:23.
foreseeable
  59:20.
forfeit 13:3.
forfeiture
  13:1, 13:5,
  36:5, 36:6.
form 13:20,
  14:23.
former 9:10,
  9:16.
forth 12:18,
  25:1, 30:4,

31:3, 31:7,
  31:12, 33:17,
  33:19, 36:6,
  45:21,
  61:22.
forward 6:20,
  7:12, 13:6,
  39:23,
  56:20.
foul 72:23.
found 27:2,
  42:23, 49:10,
  52:5.
four 15:21,
  18:19, 22:19,
  33:5, 44:7,
  44:9, 46:2,
  46:7, 66:15,
  67:5, 70:19,
  72:11,
  72:15.
Fourth 1:30.
Frankly 69:3,
  69:12,
  73:8.
fraudulent
  10:11, 10:18,
  10:21, 11:11,
  11:20, 11:23,
  12:17, 33:24,
  40:13, 56:25,
  57:11, 57:22,
  58:3, 58:6,
  58:12, 58:14,
  58:19, 58:24,
  59:5, 59:16,
  59:18.
fraudulently
  12:23.
Freedom 45:8,
  45:14.
freely 33:10.
Friday 1:18.
Friday 68:2.
friend 67:18.
front 6:7,
  72:11.
full 24:7.
fully 2:19,
  2:20, 3:7,

4:11, 5:1,
  26:21, 27:5,
  29:24, 61:12,
  69:11.
funded 11:13,
  58:8.
funding
  59:18.
funds 12:24,
  52:18, 57:25,
  58:4, 58:9,
  64:17.
future 35:23.
.
.
< G >.
gag 52:8,
  53:23.
Gall 40:18.
game 67:3.
gather 15:6,
  22:1, 31:19,
  44:24.
gave 72:3.
General 4:8.
gentlemen
  4:11.
Georgia 51:5,
  59:8, 63:24,
  64:4, 64:8,
  64:11, 64:13,
  64:15, 64:24,
  65:2, 71:2,
  71:5,
  73:13.
gets 67:2.
getting
  72:16.
Gilden 1:36.
girlfriend
  72:7.
give 18:1,
  18:7, 43:5,
  43:7, 48:24,
  49:1, 56:13,
  62:6, 66:18,
  71:12.
given 22:25,
  27:6, 43:13,
  49:19,

70:21.
gives 45:9.
goal 40:25.
goals 41:2.
Goo 3:22, 3:25,
  43:6.
gotten 64:7.
GPS 65:11,
  67:20.
grand 8:1,
  13:21.
grandchild
  51:23, 52:10,
  52:19.
granddaughter
  53:20.
grandson 54:4,
  54:6, 54:16,
  54:17, 54:21,
  54:25, 55:5,
  55:15.
great 66:7,
  66:18, 67:3,
  71:16.
greater 41:1.
gross 36:21.
Groton 54:15.
gt 13:19.
guess 72:12.
guidance
  39:11.
guideline 16:8,
  18:1, 18:3,
  21:14, 21:15,
  21:18, 21:22,
  21:25, 40:21,
  40:24, 41:4,
  41:5, 41:7,
  41:23, 42:8,
  43:1, 44:25,
  45:1.
Guidelines
  16:4, 16:18,
  18:4, 19:13,
  21:16, 21:17,
  22:3, 39:12,
  39:15, 39:19,
  39:20, 39:21,
  39:22, 39:24,
  40:2, 40:25,

42:8.
guilt 46:19,
  48:13,
  48:16.
.
.
< H >.
Haiti 27:22,
  68:13.
half 7:18,
  28:6, 39:12,
  43:25, 69:20,
  69:21.
Hampstead
  58:23.
hand 24:3,
  24:6.
handcuffs
  75:21.
handled
  70:23.
hands 28:2.
happened
  69:7.
hardship
  56:7.
harsher
  35:25.
He'll 43:7,
  63:10.
hear 47:10,
  51:2, 71:5.
heard 69:3.
hearing 8:5,
  28:11, 29:9,
  66:17.
hearings
  62:12.
held 28:11,
  28:13, 28:18,
  29:2, 47:5,
  70:5.
help 51:13.
hereby 76:22.
Hershfield
  1:36.
high 16:13,
  18:25, 19:17,
  32:17,
  37:12.

higher 16:5,
  16:14, 16:18,
  41:23.
highly 75:20.
hire 66:12.
History 5:17,
  6:17, 16:11,
  16:13, 17:5,
  17:20, 17:24,
  18:23, 18:24,
  19:14, 40:10,
  42:3,
  67:10.
hit 64:10.
Hold 3:19,
  45:25,
  48:11.
home 65:10,
  72:18.
Honorable
  1:17.
hour 7:5,
  7:18.
housing
  35:11.
hundred
  27:25.
hung 47:5.
.
.
< I >.
idea 18:8,
  19:11, 19:16,
  43:14.
identified 3:4,
  52:24,
  53:2.
identifies
  58:13.
identities
  11:22,
  20:16.
identity 10:14,
  11:4, 11:12,
  57:7, 58:8,
  59:17.
ill 67:15.
illegal 52:5.
Illinois
  55:14.

illness 26:4.
immediately
  63:6.
imparted
  69:13.
impeachment
  47:23.
important
  21:16, 23:13,
  23:17, 25:18,
  29:15, 39:8,
  42:5.
impose 40:14,
  40:25.
imposed 28:20,
  40:11, 43:12,
  53:23.
imposing
  40:3.
imprisonment
  36:20,
  36:24.
incarcerated
  51:24.
incarceration
  15:20,
  15:21.
incident 54:25,
  55:4.
incidents
  51:14,
  63:20.
inclined 15:23,
  19:5,
  70:15.
include 36:11,
  40:10.
included
  57:25.
Including 9:7,
  9:16, 11:13,
  26:25, 52:25,
  58:9.
incorporated
  12:2.
incorrect
  5:18.
increased
  9:6.
indefinite

22:21.
independent
  50:18,
  61:19.
indicated 5:25,
  23:12, 32:15,
  65:9.
indicating
  33:1, 52:5.
indication
  27:9, 66:2.
indictment
  7:13, 8:1,
  8:2, 13:20,
  13:22, 14:1,
  14:18, 14:23,
  14:25, 19:25,
  21:2, 21:3,
  23:10, 24:14,
  24:25, 26:14,
  26:18, 27:3,
  28:5, 33:17,
  34:1, 36:19,
  50:4, 50:19,
  50:24, 56:14,
  60:7, 60:22,
  61:23,
  69:20.
indigent
  49:2.
individual
  10:21, 12:25,
  20:17, 51:22,
  54:18,
  57:14.
individuals
  40:12,
  51:16.
induce 31:2,
  52:3.
influence 14:8,
  26:6.
informed
  61:12.
initial 13:7,
  13:8, 13:9,
  28:7.
initialed
  13:12.
initially

17:25.
initials 12:14,
   12:25,
   20:17.
injured 52:6,
   72:10.
innocence
   48:15.
innocent
   46:17.
inquire 2:23,
   27:8.
inquiry 6:8,
   66:17.
inside 53:9.
Inspector
   4:8.
instructed
   53:25, 54:8,
   55:1, 55:6,
   55:20.
insurance 8:9,
   8:23, 9:1,
   9:6, 9:7,
   9:12, 9:13,
   9:18, 9:20,
   20:13, 20:19,
   50:25, 59:15,
   60:12,
   64:10.
intended 9:1,
   76:13.
intention
   68:10.
intentions
   65:15.
interest 67:7,
   73:5.
interim 6:8.
internet 9:14,
   9:15, 10:19,
   57:12.
interpret 3:3,
   44:19,
   66:13.
interstate
   12:20, 34:14,
   50:10, 51:11,
   57:3.
intervention

68:25.
introduced
   15:12,
   31:18.
Investigation
   4:6, 43:2,
   62:3, 62:9,
   62:13.
involved 53:12,
   70:8.
involves
   38:12.
involving
   51:25, 54:25,
   55:5.
Island 54:3.
issuance 11:4,
   48:21,
   57:20.
issue 21:14,
   37:20, 66:24,
   74:8.
issued 10:24,
   11:12, 39:16,
   57:17, 58:2,
   58:7, 58:15,
   58:17, 58:18,
   58:22, 58:23,
   59:3, 59:4,
   59:12.
issues 16:23,
   21:22, 41:5,
   42:9, 44:25,
   45:2,
   67:12.
items 36:11.
itself 32:16.
.
.
< J >.
J.N. 53:19,
   53:20.
jail 54:4,
   55:16.
January 39:16,
   39:23, 55:3,
   55:9.
Jason 1:41,
   4:2, 4:6.
jeopardize

76:14.
job 9:11,
   64:18,
   64:22.
jobs 35:10.
joint 8:24,
   37:25.
jointly
   37:11.
Judge 2:18,
   3:2, 6:7,
   6:10, 22:6,
   28:8, 28:12,
   29:9, 29:14,
   35:24, 53:23,
   61:8, 67:16,
   67:23, 68:18,
   71:3, 71:22,
   75:14.
judges 40:1,
   40:21.
July 58:5.
jump 70:11.
jurisdiction
   74:19.
juror 47:4.
jurors 46:10,
   46:23.
jury 8:1,
   13:21, 27:2,
   45:23, 46:6,
   46:9, 46:13,
   47:1, 47:5,
   48:6, 48:7,
   48:10, 48:12,
   49:10.
Justice 14:3,
   45:15,
   55:6.
.
.
< K >.
keep 14:25,
   35:9,
   35:10.
keeping 3:2.
key 40:17.
kind 14:9,
   16:23, 17:5,
   26:4, 26:7.

knowing 14:7,
   61:18.
knowingly
   12:19, 33:22,
   34:1, 34:13,
   50:3, 50:8,
   57:2.
knowledge
   32:17,
   50:9.
known 25:21,
   51:7,
   56:23.
knows 14:14.
.
.
< L >.
La 53:18.
Labor 4:7,
   9:12, 9:20,
   9:22, 9:25,
   10:1, 10:19,
   10:23, 11:19,
   12:7, 12:11,
   12:17, 20:15,
   45:16, 57:12,
   57:23, 58:11,
   58:25.
Lancaster
   55:17, 55:19,
   55:23.
language 19:1,
   26:1.
last 2:13,
   7:18, 27:21,
   39:11, 45:12,
   63:18, 64:17,
   72:19.
late 6:6.
later 72:11.
law 45:8,
   64:4.
lawful 9:2,
   44:18,
   44:22.
laws 43:23.
lawyer 25:20,
   27:10, 27:12,
   27:13, 27:19,
   27:20, 27:23,

27:25, 51:22,
68:14, 68:18,
69:2,
75:19.
lawyers
66:20.
least 11:12,
33:20, 49:24,
51:5, 56:4,
56:5, 56:7,
56:21, 58:7,
59:16, 59:18,
64:16,
70:19.
leave 75:6.
legal 51:13,
51:25,
52:20.
legalese
18:17.
less 17:1,
18:18, 19:4,
19:20, 33:5,
41:22, 43:25,
44:18,
44:20.
lessening
65:16.
letter 7:9,
7:12, 7:15,
15:3, 15:12,
22:17, 22:25,
23:1, 23:5,
30:4, 30:6,
30:11, 31:4,
31:7, 31:11,
31:17, 32:10,
32:11, 33:20,
36:17, 37:10,
39:14, 40:9,
41:14, 45:22,
59:23.
level 16:10,
17:4, 17:5,
21:20, 22:9,
22:22, 41:14,
41:16.
levels 18:22,
22:20.
licenses

35:10.
Licensing
12:7.
lie 6:23.
lied 23:21.
light 8:17,
19:24.
lightly
29:16.
likely 65:24.
limited 52:25,
73:11.
list 2:7.
listed 10:21,
36:9.
Literally 7:6,
74:14.
litigated
29:3.
Litigation
37:20.
little 2:14,
6:17, 65:19,
68:6, 68:7.
lives 67:16.
living 65:6.
loans 35:11.
located
12:23.
locations 11:6,
52:24, 53:2,
53:8, 57:21,
58:1.
long 40:5,
44:18.
longer 65:12,
67:6.
look 11:15,
29:7,
68:13.
Looking 30:10,
32:9.
lose 34:22,
34:23, 34:24,
35:9,
35:12.
loss 36:21.
Losses 59:19.
Lost 9:9, 9:11,
11:14,

70:5.
lot 2:12,
23:13, 68:9,
68:17, 73:6,
75:1.
low 16:4, 16:7,
16:18,
18:3.
lower 24:6.
Lowndes 59:8.
Luco 65:9,
65:11.
luxury 76:7.
Lyft 54:12,
55:11.
lying 6:25.
Lynn 65:7.
.
.
< M >.
Magistrate 6:7,
28:8, 28:12,
29:9, 29:14,
71:3,
71:22.
mail 9:22,
21:5, 21:7,
33:14, 49:24,
51:8, 52:14,
61:23.
mailed 10:25,
57:17,
57:21.
mailing 11:5.
mails 33:25.
main 32:5.
maintained
70:4.
major 72:23.
man 72:1.
mandatory
39:21,
39:22.
March 9:4,
28:8, 28:11,
28:13, 28:21,
29:2, 63:9,
72:17.
margin 19:18.
marijuana

64:5.
Marshals 66:25,
71:6.
Martin 1:42,
4:3, 4:7.
MARYLAND 1:2.
mask 2:20,
2:23, 2:25,
5:4.
masking 2:15.
masks 2:16,
2:18, 3:3.
massive
71:16.
materially
12:17, 33:24,
34:8.
matter 5:12,
5:14, 5:18,
8:19, 13:2,
14:4, 21:15,
36:4, 37:8,
38:19, 41:17,
64:17,
76:24.
matters 41:11,
76:7.
maximum 36:17,
36:19,
36:23.
Mcmillan
63:22.
mean 27:19.
Meaning 7:24,
38:1, 40:1.
means 5:25,
10:10, 12:17,
12:20, 15:22,
16:13, 16:25,
17:7, 17:8,
17:12, 18:17,
33:23, 34:7,
44:8, 50:2.
meant 63:15.
Medard 2:4,
4:18, 10:9,
24:8, 51:4.
MEDARD ULYSSE
1:10.
medication

14:9, 26:7,
26:9.
meet 62:7.
meets 9:16.
member 3:11,
25:21, 34:2,
50:3, 53:17,
54:1, 55:13,
55:22.
members 8:2,
20:1, 27:17,
51:11, 51:16,
53:15,
57:8.
memoranda
62:21.
memorandum
63:1.
mental 26:4.
mentioned
25:14, 38:11,
67:13.
merchandise
10:13,
57:5.
mercifully
72:9.
Miami 8:23,
51:4.
mile 67:18.
million
37:13.
minimum 16:16,
67:5,
72:15.
minute 7:11,
21:18, 64:12,
72:18,
74:8.
minutes 7:7,
23:14.
misrepresentati
ons 6:23.
mistaken
45:25.
mistakes
71:8.
modifications
60:2.
modify 62:20.

moments 21:4,
49:18,
50:15.
Monday 5:23,
68:12.
monetary
8:25.
money 10:13,
12:17, 20:2,
27:23, 33:23,
34:7, 50:2,
51:12, 51:15,
51:25, 53:21,
54:5, 54:6,
55:17,
57:5.
monitor
67:20.
monitored
38:14.
monitoring
65:10,
65:13.
month 37:18.
months 15:4,
15:20, 15:24,
16:3, 16:14,
17:2, 17:9,
17:13, 17:14,
19:5, 19:20,
32:14, 32:16,
32:19, 39:9,
40:6, 41:22,
42:15, 43:15,
43:21, 43:24,
44:7, 44:9,
44:19, 44:21,
70:22,
72:11.
morning 54:9.
mother 27:17.
motion 29:3,
29:8.
move 6:20,
56:20.
movies 72:8.
moving 3:2,
23:13,
23:14.
MR. BENDER

4:13.
MR. MARTIN
4:14.
Ms 3:1, 3:13,
3:17, 3:19,
3:22, 3:24,
5:14, 14:5,
14:22, 20:9,
23:4, 23:6,
24:1, 24:22,
30:7, 30:8,
31:17, 43:5,
43:6, 62:4,
62:17,
62:20.
MS. CUSSON
3:15, 3:18.
multiple
59:12.
multiply
71:25.
multistep
40:22.
music 69:23.
mystified
6:17.
.
.
< N >.
name 7:20,
9:23, 11:17,
12:12, 12:24,
24:7, 57:17,
58:10, 58:17,
58:20, 58:22,
59:1, 59:3,
59:6,
59:10.
namely 12:22.
names 10:14,
10:22, 10:25,
11:3, 11:5,
11:12, 11:21,
11:24, 48:24,
49:1, 57:6,
57:15, 57:21,
58:7, 58:15,
59:12,
59:17.
narcotic

26:4.
narcotics
54:18.
naturalized
35:5.
nature 13:16,
19:24, 40:11,
61:14.
necessarily
73:10,
76:14.
necessary 14:6,
41:1,
52:19.
need 5:3,
19:23, 27:8,
32:1, 68:17,
76:12.
needed 20:2,
27:20, 51:25,
53:21, 54:4,
55:17.
needs 65:12.
neither
19:12.
nervous 68:7.
New 27:20,
27:23, 58:23,
68:14.
newest 3:11.
Nice 3:9, 3:13,
3:17, 4:9,
4:15, 4:20.
Nicole 5:9,
43:4, 62:4.
No. 1:9, 5:22,
8:10, 31:18,
75:10,
75:14.
normal 43:22.
normally
26:10.
Northern
63:23.
NORTHERN
DIVISION
1:3.
note 2:15, 5:5,
15:2, 21:12,
37:8, 43:6,

50:20, 64:7,
70:13.
noted 36:16,
39:21, 40:20,
41:13,
50:10.
notes 36:8,
37:10, 41:11,
42:2, 44:17,
45:7.
nothing
67:13.
notice 20:14,
20:15, 23:9,
28:10.
notification
20:7.
notified 5:19,
5:24, 20:3,
20:6, 20:7,
20:23.
notify 62:23.
notifying
19:25,
20:10.
November 11:9,
33:18, 58:5,
59:7, 62:17,
62:21.
number 2:5,
7:14, 14:2,
61:10,
61:11.
numbers 10:22,
57:15.
.
.
< O >.
o'clock
62:15.
oath 6:22,
23:11, 23:13,
23:18, 24:2,
25:11,
71:20.
objections
43:6, 43:8,
62:10, 62:18,
62:19.
obstruction

55:6.
obtain 10:10,
10:12, 12:24,
33:23, 34:7,
56:24,
57:5.
obtained 10:12,
52:21, 57:5,
58:1.
obtaining
50:2.
obviously 18:4,
20:14, 25:25,
37:18,
41:23.
occasion 30:19,
64:5.
occasions
71:23.
occupant
52:6.
occurred 51:15,
68:1.
October 15:16,
15:17, 45:24,
76:9.
off-duty
72:9.
offend 69:4.
offense 8:4,
16:10, 17:4,
18:22, 21:15,
21:20, 22:2,
22:9, 22:21,
34:3, 34:12,
34:16, 40:11,
41:15, 49:22,
50:12.
offenses 33:10,
34:18, 34:22,
35:18, 36:18,
38:1, 61:21,
61:22, 64:9,
71:20.
Office 1:29,
3:14, 4:7,
7:7, 18:22,
19:16, 37:21,
38:14, 42:5,
62:5,

62:13.
officer 5:6,
5:7, 5:8,
43:3, 51:22,
54:19, 54:23,
55:1, 55:3,
55:7, 62:8,
63:21, 63:22,
72:9.
Official
76:28.
often 52:1.
Okay 4:1, 8:13,
8:20, 32:7,
76:2.
old 53:18,
54:3,
54:14.
once 41:6,
54:6.
one 3:19, 13:6,
15:23, 21:2,
22:14, 32:7,
32:8, 33:20,
44:13, 45:25,
47:4, 49:25,
53:3, 60:8,
60:24, 66:19,
67:14, 71:3,
71:25, 72:13,
72:18,
75:23.
one-count 8:8,
11:25, 24:25,
50:5, 50:20,
50:25, 56:16,
61:25.
one-third
43:24.
open 21:14,
21:18.
opened 53:8,
53:10.
opening
55:24.
operative
7:10.
opinion 16:21,
39:16.
opinions 39:11,

40:17,
40:18.
opportunity
62:11.
opposed
72:13.
opposing
62:23.
order 12:23,
37:9, 47:3,
52:2, 52:7,
52:9, 52:23,
53:23, 57:1,
62:16, 62:25,
63:5.
ordered 6:5,
37:17.
ordering
71:12.
original 15:2,
19:24, 23:5,
30:6,
30:10.
originally
69:19.
others 10:15,
11:7, 11:21,
20:9, 37:12,
47:3, 51:7,
52:11, 56:4,
56:23, 59:16,
73:1.
overnight
52:13.
own 9:3, 27:9,
27:12, 27:13,
33:9, 42:19,
47:13, 47:15,
76:15.
.
.
< P >.
p.m. 2:1,
76:20.
PA 1:36.
pace 3:2.
package 53:24,
54:7, 54:21,
55:9, 55:12,
55:19, 55:22,

55:24,
56:1.
packages 53:7,
53:8, 53:10,
54:9,
54:13.
page 30:12,
30:17.
paid 65:3,
69:2.
Pandemic 9:5,
9:7, 9:8,
11:14,
11:15.
panel 14:3.
panicked 72:6,
72:13.
paper 5:22,
8:10.
paperwork
14:6.
Paragraph 12:3,
15:3, 15:11,
15:18, 16:22,
21:13, 22:16,
32:11, 33:19,
36:7, 36:9,
36:16, 37:9,
39:13, 40:9,
41:10, 41:13,
41:21, 42:2,
42:7, 42:14,
44:17, 45:6,
45:19,
45:21.
paragraphs
12:1, 36:6,
41:13,
56:18.
parameters
16:21.
Parcel 52:14,
52:15.
Pardon 29:22,
64:21.
parole 35:17,
35:19, 43:19,
43:25, 44:12,
44:14.
part 11:8,

47:13.
partial 39:7.
participants
2:24.
participate
46:13.
participated
34:13,
50:8.
participation
53:16.
particular
39:19, 51:16,
52:13.
parties 40:6.
parts 23:14,
23:15.
party 32:12,
32:14, 32:20,
65:12.
passed 45:9,
54:17.
past 35:17,
56:18,
71:23.
pay 37:17,
37:19, 51:13,
52:20, 55:18,
64:18,
68:17.
payment 37:24,
38:2.
payments 9:1,
37:21, 53:15,
57:24,
58:1.
penalties
23:18,
36:23.
penalty
36:19.
pending 70:5.
Pennsylvania
53:1, 55:18,
55:23.
people 3:3,
8:3, 46:9,
49:4, 53:6,
53:11, 58:15,
69:6, 72:14,

74:12,
76:1.
per 37:18.
percent
27:25.
period 28:14,
37:18, 63:8,
63:17.
periodic
10:3.
perjury 6:25,
23:18, 23:23,
25:16.
permit 62:8,
69:24, 69:25,
71:1.
permits
35:10.
perpetration
50:9.
persist 46:8.
person 11:22,
33:20, 49:25,
54:15, 58:13,
65:24,
72:10.
personal 13:3,
40:10.
persons 11:24,
20:22,
49:5.
persuaded
51:9.
phone 27:17,
53:19, 54:3,
54:15, 54:16,
54:17,
55:15.
physically 6:5,
73:24.
pick 67:18.
pictures
57:3.
pique 69:18.
place 6:22,
23:11.
placed 23:18,
31:19, 32:2,
32:8, 52:9,
69:22.

places 30:21,
68:14.
Plaintiff 1:7,
1:25.
plead 5:25,
14:17, 24:15,
24:16, 24:18,
24:20, 31:2,
33:7, 46:4,
60:19, 60:22,
60:24, 68:4,
68:5,
68:10.
pleading 21:1,
29:17, 33:9,
34:16, 45:13,
46:5, 49:23,
50:12, 59:25,
71:20.
pleas 35:13,
38:24, 46:8,
50:18, 50:22,
61:7, 61:13,
61:15, 61:16,
61:19,
67:4.
Please 3:5,
24:3, 24:7,
28:3, 60:1,
70:18.
pleased
70:23.
pled 65:21,
72:2.
plexiglass
2:22.
pockets 28:3.
point 6:12,
14:11, 14:12,
18:7, 38:6,
38:9, 39:23,
40:22, 44:24,
45:2, 64:6,
68:21, 71:13,
74:2, 75:8,
75:12.
police 51:21,
54:18, 54:19,
54:23, 55:1,
55:3, 55:7,

72:9.
policies
  2:15.
portion 32:7.
pose 65:24.
posed 52:2.
posing 51:21.
position 19:12,
  29:16,
  69:8.
positive
  64:5.
possess
  42:19.
possibility
  21:19, 27:1,
  35:18,
  39:2.
possible 38:23,
  73:14.
Postal 51:10,
  52:14.
postponed
  15:15,
  46:1.
postponements
  76:10.
posture 6:12,
  7:3, 8:17,
  23:9, 38:6.
postures 2:8.
potential 22:8,
  43:24.
potentially
  32:18.
Pratt 1:37.
predecessor
  12:12.
predicate
  56:13.
preliminary
  8:5.
prepaid 9:23,
  12:24.
prepare 43:4.
prepared 43:2,
  50:17,
  62:4.
Present 1:41,
  4:18.

presented
  69:7.
presentence
  42:4, 43:2,
  43:4, 62:3,
  62:9,
  62:13.
presiding
  2:18.
presume
  40:21.
presumed
  46:17.
pretenses
  10:11, 12:18,
  33:24, 34:8,
  50:3, 50:7,
  51:12,
  56:25.
pretrial
  65:13.
pretty 66:23.
Previously
  5:15, 39:20,
  68:23,
  70:13.
Prior 9:17,
  9:19,
  47:24.
priority
  52:14.
prison 37:7,
  38:16, 67:5,
  70:19, 72:4,
  72:12,
  72:16.
private
  51:11.
privilege
  47:18.
probable 7:19,
  7:24, 7:25,
  8:3.
probably 19:23,
  74:5.
Probation 5:6,
  5:7, 5:8,
  16:12, 17:19,
  17:25, 18:22,
  19:15, 35:17,

35:19, 38:14,
  42:5, 43:3,
  62:5, 62:8,
  62:13, 63:21,
  63:22.
problem 67:20,
  68:16.
procedural 2:8,
  5:17, 6:11,
  6:17, 7:3,
  23:9.
Procedure
  15:22.
proceed 5:22,
  13:22, 14:5,
  26:13,
  66:8.
proceeding 8:6,
  66:10.
Proceedings
  1:16, 20:3,
  31:19, 66:8,
  76:20,
  76:24.
proceeds 3:20,
  13:4,
  53:11.
process 5:20,
  39:5, 40:23,
  41:3,
  43:22.
proffer
  20:25.
proffering
  21:3, 21:5.
Program 8:24,
  9:8, 9:9,
  11:15,
  11:16.
programs 9:5.
prominent
  25:21.
promises 10:11,
  12:18, 31:1,
  33:25.
pronouncing
  7:20.
property 10:10,
  10:13, 13:3,
  27:21, 36:5,

36:6, 36:9,
  56:25, 57:6,
  68:13,
  68:14.
prosecute
  23:23.
prosecuted
  6:24,
  25:15.
prosecution
  13:21,
  25:15.
prove 46:19,
  48:13, 48:15,
  48:16,
  50:17.
provide 9:2,
  54:12,
  55:11.
provided 8:25,
  10:25,
  57:18.
provides 32:11,
  62:25.
provisions
  39:22.
public 2:16,
  3:11, 35:10,
  35:11.
pull 2:25,
  5:3.
pulled 2:19,
  2:20.
purported
  54:19, 54:23,
  55:1, 55:3,
  55:7,
  55:18.
purpose 12:4,
  50:1.
purposes 31:18,
  33:21,
  52:19.
pursuant 9:21,
  40:23,
  42:7.
pursued
  64:15.
put 44:14,
  48:3, 48:8,

48:9, 71:1,
73:18,
75:21.
.
.
< Q >.
question 14:14,
25:19, 65:18,
67:21,
76:10.
questioned
47:24.
questions
25:14,
25:19.
quick 3:2.
Quinta 53:18.
quite 69:13,
73:8.
.
.
< R >.
R.B. 58:20,
59:1.
R.S. 55:15.
raise 24:3,
70:10.
range 16:3,
16:8, 16:18,
18:2, 18:3,
18:6, 40:22,
40:24, 41:4,
43:1.
rather 30:10,
66:4, 68:2,
68:6, 74:3.
RDB-21-0054
7:14,
61:11.
RDB-22 2:5.
RDB-22-0335
24:17,
61:11.
re-arraignment
5:19, 5:21,
14:18.
reached 15:4,
15:19.
read 8:13,
8:18, 12:1,

25:25, 34:9,
56:11, 59:22,
62:9.
ready 23:11.
real 11:22,
11:24, 13:3,
58:13,
58:15.
realities
74:4.
Really 16:15,
16:20, 16:21,
18:10, 27:10,
27:16, 63:3,
67:2, 70:23,
71:23,
73:22.
reason 21:19,
61:5, 70:1.
reasonable
40:22, 46:19,
48:13, 48:17,
59:19.
reasons
70:11.
recall 71:25.
receive 9:18.
received 2:21,
5:16, 9:17,
9:25, 26:17,
54:15.
receiving
49:6.
recently 26:3,
64:7.
recommend 18:2,
18:8, 19:18,
42:14.
recommendation
18:5.
reconsideration
29:4, 29:8.
record 3:5,
6:4, 13:11,
24:7, 33:1,
47:25, 59:22,
70:14,
76:24.
recordings
53:9.

recovered
59:10.
recruited
53:6.
refer 51:18,
62:12.
reference 7:16,
12:2, 12:8.
referenced 7:8,
7:15, 16:22,
17:6, 30:3,
39:12,
40:8.
references
7:13,
15:18.
referring
22:11.
reflect 6:4,
13:11, 59:22,
71:17.
reflected
15:4.
regard 48:18,
64:16, 67:13,
69:8.
registered
74:6.
regular 35:8,
62:16, 62:25,
63:5.
Regulation
12:7.
related 19:25,
67:22.
relates 18:11,
39:10, 50:23,
50:25.
relative
51:23.
relatives
51:13,
52:2.
release 2:12,
6:16, 6:19,
23:17, 29:10,
29:11, 29:13,
29:16, 36:20,
36:24, 37:19,
38:12, 38:15,

63:18, 64:3,
66:15, 67:7,
69:18, 69:22,
71:18, 72:2,
72:3,
74:18.
released 29:4,
29:5,
54:21.
relevant 20:8,
61:14.
remain 41:12.
remaining
64:9.
remains 41:17,
41:24.
rendered 39:20,
39:24.
report 42:5,
43:2, 43:5,
43:9, 43:16,
62:4, 62:6,
62:13, 62:17,
62:20, 62:21,
64:7.
Reporter 1:45,
3:1, 76:28.
reports 62:9.
represent 6:3,
14:1, 14:3,
25:22.
representation
27:6, 50:16,
56:25, 66:6,
66:19.
representations
10:11, 12:18,
33:24.
represented
49:2, 68:4,
68:5.
representing
4:18.
request 16:18,
45:15, 45:17,
46:1.
require 2:16.
required 14:14,
37:3, 48:15,
49:5,

62:22.
requirements
  9:16.
requiring
  52:9.
reside 51:17.
resident 8:22,
  51:4.
residential
  52:24, 53:2,
  53:8.
respect 8:23,
  13:2, 15:2,
  20:12, 22:16,
  30:14, 31:14,
  37:21, 37:25,
  39:6, 42:8,
  44:16, 45:22,
  50:6, 60:6,
  60:8, 61:20,
  64:2,
  66:14.
respected
  75:20.
respective
  26:25.
respectively
  54:11.
response 9:4,
  58:19, 58:24,
  59:5.
responsibility
  69:8.
responsible
  37:12.
restitution
  36:5, 37:8,
  37:9, 37:11,
  37:14, 37:22,
  37:24,
  38:6.
result 11:20,
  27:13, 35:24,
  36:21, 42:17,
  56:2, 57:22,
  58:3, 58:12,
  59:14,
  70:18.
resulted 50:10,
  56:7.

resulting 16:8,
  41:14,
  59:18.
retain 6:1,
  6:4, 27:9,
  27:12,
  27:24.
retaining
  27:13.
retrial 47:6.
retrieval
  54:13,
  55:12.
retrieve 30:8,
  55:22.
retrieving
  53:6.
return 5:20,
  31:16, 40:14,
  71:2.
returned 28:5,
  54:7, 56:6.
returns 25:3.
review 30:19,
  40:4, 43:6,
  43:7,
  74:19.
reviewing
  42:4.
Richard 4:18,
  30:5.
Richard Bardos
  1:35.
Richard D.
  Bennett
  1:17.
ride 54:12,
  55:11.
Rights 20:22,
  34:22, 35:9,
  44:16, 45:8,
  45:9, 45:21,
  48:17, 49:19,
  49:20.
rise 56:13.
risk 67:9,
  70:2,
  73:23.
rob 72:7.
robbery 72:1.

role 21:14,
  22:2.
room 71:8.
route 71:4.
RPR 1:45,
  76:22.
Rule 15:21,
  16:21,
  19:2.
Rules 15:22.
rulings
  19:16.
run 64:10.
.
.
< S >.
S. 1:30.
sale 53:3.
satisfied
  26:12, 27:5,
  27:15, 27:25,
  29:24, 31:6,
  31:10, 38:22,
  39:1,
  61:18.
saying 3:3,
  27:11, 27:18,
  74:13.
says 12:6,
  16:12.
scam 60:9.
schedule
  66:17.
scheduled 5:12,
  5:14, 5:18,
  15:15.
scheme 10:5,
  10:6, 10:9,
  11:8, 12:5,
  33:23, 34:7,
  34:12, 34:14,
  34:15, 50:2,
  50:7, 50:8,
  50:23, 50:25,
  51:18, 53:12,
  53:16, 56:3,
  56:11, 56:19,
  56:24, 57:1,
  59:15,
  60:12.

school 25:23.
Schulman
  1:36.
Scott 63:20.
seal 31:19,
  31:22, 31:25,
  32:2, 32:4,
  32:8.
sealed 32:5.
Sean 3:6, 30:5,
  50:16.
Sean Delaney
  1:27.
search 59:10.
seated 4:2,
  50:14,
  64:12.
Second 2:6,
  2:21, 3:19,
  7:4, 8:7,
  13:6, 25:24,
  40:18, 45:25,
  60:8.
secrecy 52:9.
Section 3:11,
  3:16, 21:8,
  21:10, 22:3,
  35:11, 40:8,
  61:24, 62:2,
  65:20, 73:4,
  73:21.
sections
  39:20.
Security 10:22,
  57:15.
seek 45:10,
  45:14.
seeking
  45:15.
seem 76:3.
seeming
  69:23.
seen 8:11,
  16:23, 41:17,
  41:24,
  71:23.
selected
  46:10.
selection
  46:13.

self-incriminat
  ion 47:18.
sell 27:21,
  68:14.
senate 64:23,
  65:1.
send 52:3,
  52:12, 53:21,
  54:4, 54:20,
  55:1, 55:7,
  55:17, 55:25,
  56:5, 71:5.
sends 51:9.
Senior 63:22.
sent 38:16,
  51:15, 52:16,
  52:25, 53:9,
  53:24, 54:7,
  54:10, 54:21,
  55:9, 55:18,
  55:22,
  70:24.
sentenced 17:1,
  33:5, 71:13,
  72:2.
sentences
  36:18,
  40:11.
Sentencing
  25:3, 39:6,
  39:12, 39:24,
  40:15, 41:2,
  42:14, 62:5,
  62:12, 62:14,
  62:16, 62:21,
  62:25, 63:1,
  63:5, 75:4,
  75:5.
separate 6:24,
  7:14, 38:19,
  42:22.
separately
  47:2.
separation
  9:17.
September 5:23,
  7:18, 28:17,
  28:24, 29:3,
  29:6, 29:7,
  29:10, 29:13,

63:12, 63:18,
  70:6,
  72:17.
September 23rd
  1:18.
serious 52:4,
  67:2, 68:17,
  76:7.
seriousness
  69:12.
serve 44:13.
served 28:19,
  38:17, 49:3,
  70:22, 72:16,
  73:12,
  75:4.
Service 51:10,
  52:13, 52:14,
  52:15.
services 29:25,
  61:18,
  65:13.
set 12:18,
  25:1, 29:10,
  30:4, 31:3,
  33:17, 33:19,
  36:6, 38:13,
  45:21, 45:24,
  61:22,
  71:2.
sets 31:7,
  31:11.
setting 5:21.
seven 72:13.
seven-count
  21:3.
several 9:5,
  25:15,
  37:25.
severally
  37:11.
shall 13:3.
share 38:1,
  52:11, 54:12,
  55:11.
She'll 43:5,
  43:7,
  62:20.
sheet 5:12,
  5:13,

28:15.
Sheriff 59:9.
shifts 48:14,
  65:22.
shopping 2:7.
shortest
  71:4.
shot 72:10.
show 67:11,
  71:24.
side 62:18,
  62:22.
sides 44:21.
sign 62:16,
  63:5.
signals 12:21,
  57:3,
  70:24.
signature
  30:12,
  30:15.
signed 30:20,
  30:24,
  32:23.
significantly
  16:5.
signs 12:21.
similarly
  40:12.
simple 17:8,
  18:12, 18:16,
  19:1, 64:9.
simply 18:25.
situated
  40:12.
situation
  14:15, 26:24,
  52:4, 52:9,
  69:2, 69:14,
  71:21.
six 11:12,
  44:7, 58:8,
  70:22,
  72:13.
skip 56:18.
Social 10:22,
  57:15.
solitary
  73:18.
sometimes

52:4.
somewhere
  42:15.
son 67:15,
  67:17.
sorry 2:5,
  3:23, 4:3,
  16:2, 16:6,
  17:23, 22:13,
  22:15, 22:18,
  28:4, 39:13,
  60:14, 61:2,
  63:12,
  63:16.
sounds 12:21,
  57:3.
space 73:11.
speaking 4:11,
  5:4, 75:16.
Special 1:41,
  1:42, 4:5,
  4:7, 37:2.
specific 72:1,
  74:3.
Specifically
  12:3, 15:18,
  20:16, 34:10,
  37:10, 40:20,
  45:7, 45:22,
  48:6, 48:10,
  48:12, 51:8,
  57:4, 58:5,
  60:21.
specified
  53:7.
spent 41:5.
spirit 76:13.
spoke 74:10,
  74:13.
St. 55:14.
stalling
  66:14.
stand 60:1,
  70:17.
stands 76:18.
start 45:24,
  75:23.
started 41:6.
starting 6:6,
  40:22.

starts 69:23.
State 8:24,
   10:20, 10:23,
   11:19, 20:14,
   24:7, 43:22,
   43:23, 57:14,
   57:23, 58:11,
   63:10, 64:13,
   64:15, 70:11,
   75:3.
stated 53:20,
   55:16.
statement
   60:3.
statements
   23:23,
   25:16.
States 1:1,
   1:5, 1:29,
   2:4, 3:7,
   21:8, 33:17,
   39:15, 39:17,
   39:18, 40:19,
   50:15, 51:10,
   51:21, 52:14,
   61:10, 61:24,
   62:1, 63:23,
   65:20,
   73:4.
status 2:24,
   64:11,
   64:12.
statute 37:4.
stays 18:15.
stenographic
   76:23.
step 71:18,
   75:5.
steps 66:11.
stickler
   63:3.
stipulate
   36:8.
stipulated
   41:21.
stipulation
   50:22,
   56:15.
stipulations
   41:11.

stop 25:20,
   51:24.
stopped 59:8.
stops 64:3.
story 72:5.
straight
   75:16.
straighten
   2:13.
Street 1:30,
   1:37.
strong 66:2,
   71:12.
strongly
   70:25.
stuff 27:22,
   68:17.
subject 40:3,
   43:23, 47:23,
   74:18.
submit 9:12.
submitted 9:14,
   10:17, 57:10,
   58:20, 58:25,
   59:5,
   59:16.
submitting
   10:13, 11:3,
   57:6,
   57:19.
subpoenas
   48:21, 49:3,
   49:6.
subsequently
   10:1.
substantial
   56:7.
substantially
   16:14,
   56:11.
sudden 71:25.
suddenly 66:15,
   69:21,
   69:22.
suffice
   65:19.
sufficient
   9:17, 41:1,
   65:13.
suggested

   66:11.
Suite 1:37.
summarize
   50:16, 56:15,
   68:1.
summarized
   6:11, 38:5,
   49:23, 56:12,
   56:20, 59:22,
   60:17.
summarizing
   56:18.
summary 17:14,
   56:10, 60:5,
   60:12.
supervised
   36:20, 36:24,
   37:19, 38:12,
   38:15.
supervising
   63:21.
supplement
   32:5.
supplements
   30:11,
   30:15.
supported
   61:19.
supposed 27:16,
   67:12, 71:24,
   74:9.
Supreme 39:11,
   39:16, 39:17,
   39:21,
   40:20.
surrender
   71:13, 72:4,
   73:7, 75:2.
sustaining
   61:20.
sworn. 24:4.
system 20:7,
   20:19, 43:19,
   43:22, 44:1,
   44:13.
.
.
< T >.
T. 1:45,
   76:27.

table 3:10,
   70:11.
talks 66:16.
telephone
   52:11.
telephoned
   51:20.
temporary 9:2,
   28:9.
temptations
   71:15.
ten 74:12.
tens 52:1,
   52:21.
terms 16:24,
   18:16, 19:1,
   19:17, 21:16,
   32:20, 41:17,
   41:23, 43:15,
   65:22, 67:2,
   72:25,
   74:3.
testified
   48:8.
testify 47:14,
   47:15, 47:23,
   48:3, 48:9,
   48:22,
   49:6.
testing 64:5.
THE CLERK
   14:24, 24:6,
   24:9, 24:11,
   24:13, 24:17,
   24:21,
   24:23.
theft 10:14,
   11:4, 11:12,
   57:7, 58:8,
   59:17.
themselves 3:4,
   52:2.
therein 12:2.
thereto 30:12,
   30:15,
   31:11.
they'll 4:10.
they've 20:7.
third 44:13,
   65:12.

thousands 51:9,
  52:1,
  52:21.
threat 73:23,
  73:24.
threaten
  33:6.
three 21:2,
  22:19, 36:20,
  36:24, 40:19,
  44:9,
  72:10.
throughout
  51:21.
thrust 16:15.
Title 40:8.
today 2:6,
  2:24, 5:10,
  6:6, 7:13,
  15:16, 23:16,
  26:10, 34:22,
  38:24, 39:3,
  41:6, 46:6,
  50:12, 62:17,
  63:6, 64:8,
  66:3, 66:24,
  68:20, 70:14,
  70:23, 71:1,
  71:18, 74:5,
  75:23.
took 7:7,
  66:11,
  67:18.
top 16:24,
  17:2, 17:5,
  19:1, 19:13,
  19:18, 33:3,
  66:19.
total 15:6,
  15:24, 16:21,
  17:3, 18:21,
  21:20, 22:21,
  41:15,
  56:5.
Totally 6:23,
  23:22, 38:19,
  67:3, 71:10,
  71:19,
  72:6.
touch 20:5.

toward 72:19.
traceable
  13:4.
tracker
  65:11.
traffic
  51:24.
transactions
  11:11,
  58:6.
Transcript
  1:16,
  76:23.
translate
  44:9.
transmit
  12:19.
transmitted
  12:20,
  57:3.
transportation
  54:12,
  55:12.
travel 64:3,
  67:17.
treated 26:3.
trial 3:21,
  6:17, 15:14,
  15:15, 15:17,
  18:15, 20:4,
  27:1, 45:23,
  46:6, 46:9,
  46:16, 47:22,
  48:3, 49:10,
  49:18, 49:19,
  49:20, 50:17,
  66:14, 70:5,
  76:9.
tried 33:6,
  69:1, 72:7.
Troy 63:20.
true 18:6,
  72:5.
truthfully
  25:19.
Try 73:18.
trying 3:20,
  27:24, 67:24,
  67:25, 69:15,
  72:22, 73:18,

  76:6,
  76:14.
Tuesday 69:8,
  69:13.
turned 29:2,
  72:8.
turns 66:9.
twice 36:21.
two 15:4,
  15:24, 20:4,
  22:19, 30:21,
  39:11, 39:19,
  40:17, 40:18,
  43:25, 44:9,
  54:13, 63:3,
  63:19, 64:17,
  64:23, 65:1,
  65:21, 71:4,
  76:10.
types 40:12.
typically
  51:23.
Tyson 5:14,
  14:5, 14:22,
  23:4, 23:6,
  24:1, 24:22,
  30:7, 30:8,
  31:17.
.
.
< U >.
ultimately
  28:20, 41:17,
  43:9.
un 11:16.
unanimous
  46:23,
  47:4.
unauthorized
  64:3.
underlying
  14:1.
understandable
  5:11.
understanding
  8:6, 20:6,
  22:20,
  68:10.
understands
  18:13, 18:18,

  38:23,
  69:11.
Unemployed 9:3,
  9:9.
uninsurance
  10:2.
Unit 37:20.
United 1:1,
  1:5, 1:29,
  2:4, 3:7,
  21:8, 39:15,
  39:17, 39:18,
  40:19, 50:15,
  51:10, 51:21,
  52:14, 52:15,
  61:10, 61:24,
  62:1, 63:23,
  65:20,
  73:4.
unknown 51:7,
  56:23.
unlawful 33:21,
  49:25.
unless 47:14.
unreasonablenes
  s 40:4.
until 28:16,
  28:22, 29:3,
  43:1,
  71:14.
upheld 39:18.
UPS 54:8,
  54:11, 55:10,
  72:23.
using 12:24.
utilized 54:11,
  55:11,
  58:21.
.
.
< V >.
V. 18:25,
  39:17.
vacant 53:2.
vaccinate
  2:21.
vaccinated
  2:19, 3:7,
  4:12, 5:1.
vaccination

2:23.
Valdosta
    59:8.
valuable
    34:22.
variance
    21:25.
variation
    71:4.
various 52:19,
    59:17.
vehicle 52:5,
    59:8,
    59:10.
verbatim 8:18,
    10:6,
    59:23.
verdict 46:23,
    47:4.
versus 2:4,
    40:18,
    61:10.
via 52:13,
    53:24, 54:8,
    54:22,
    55:10.
victim 11:5,
    11:17, 11:20,
    20:13, 51:13,
    51:22, 51:23,
    52:2, 52:3,
    52:10, 52:12,
    57:14,
    58:10.
Victims 10:14,
    10:22, 11:4,
    11:12, 19:25,
    20:2, 20:5,
    20:6, 20:10,
    20:13, 20:16,
    20:18, 20:22,
    23:9, 51:9,
    51:21, 52:8,
    52:16, 52:17,
    52:22, 56:4,
    56:6, 56:8,
    57:7, 58:8,
    59:17.
video 53:9,
    55:24,

55:25.
view 14:12,
    18:7, 38:6,
    38:9, 39:7,
    44:25, 45:2,
    55:25, 70:24,
    75:8,
    75:13.
violate
    38:15.
violated
    64:6.
violating 64:2,
    67:23.
violation 21:8,
    35:19, 42:22,
    61:24, 62:1,
    63:20, 63:25,
    64:1, 71:5.
violations
    67:13.
virtual 29:9.
Visa 9:23,
    12:24.
voluntarily
    47:15,
    71:12.
voluntary
    61:19,
    72:3.
vote 34:24.
vs 1:8.
.
.
< W >.
Wages 9:9,
    9:17, 11:14,
    37:7.
wait 71:14.
waiting 76:8.
waive 44:17,
    44:20,
    44:21.
waived 13:20,
    45:19,
    49:18.
waiver 13:20,
    14:7, 14:22,
    23:10, 40:5,
    44:19, 45:1,

45:7, 45:20,
    45:22,
    49:11.
wall 2:22.
wanted 6:1,
    27:9, 48:25,
    66:12,
    69:14.
wanting
    66:16.
wants 66:22.
warning
    70:24.
warrant
    66:25.
Washington
    54:3.
wavered
    69:15.
wearing 2:23.
week 5:15,
    5:23, 63:4,
    66:4, 67:23,
    68:1, 68:2,
    68:24.
weekend
    68:11.
weeks 46:3,
    46:7,
    66:15.
Welcome 3:17,
    4:9, 4:10,
    24:23.
Whatever 14:6,
    18:3, 44:4.
wheelchair
    72:11.
whether 2:10,
    8:3, 17:19,
    65:18, 65:22,
    66:3.
whole 26:24.
whom 48:25.
wiggle 71:8.
willfully 34:2,
    34:13, 50:8,
    57:2.
wire 8:9, 12:1,
    12:20, 21:9,
    34:5, 34:11,

36:23, 37:14,
    41:16, 50:6,
    57:4, 60:25,
    61:2, 62:1.
wires 34:14,
    50:10.
wish 24:14,
    24:18,
    60:19.
withdraw 15:25,
    19:6, 58:3,
    58:17, 58:22,
    59:3.
withdrawal
    12:22.
within 7:18,
    16:21.
without 7:25,
    38:16, 67:23,
    68:15,
    76:9.
witness 47:19,
    47:20.
witnesses 27:1,
    47:10, 47:11,
    48:21, 48:25,
    62:23.
woman 55:14.
Wonneman 5:9,
    43:4, 62:4,
    62:17,
    62:20.
word 5:16.
wording 17:7.
work 10:20,
    10:23,
    57:23.
workers 9:2.
workforce
    11:19, 57:14,
    57:16,
    58:12.
works 44:2.
worn 2:16.
worse 74:15,
    76:15.
wound 72:12.
write 25:25.
writing
    12:21.

writings
  57:2.
written 26:19,
  62:3.
.
.
< Y >.
year 24:11,
  25:24, 27:21,
  28:6, 30:4,
  43:25, 44:5,
  45:12, 63:18,
  64:1, 64:2,
  66:15, 66:16,
  69:19, 69:20,
  69:21, 72:19,
  76:8.
years 15:21,
  18:19, 33:5,
  36:19, 36:20,
  36:24, 39:12,
  40:19, 43:22,
  43:25, 44:7,
  44:9, 53:18,
  54:2, 54:14,
  67:5, 70:19,
  72:13,
  72:15.
yelling 76:4.
yesterday
  2:22.
yo-yo 68:6.
York 58:23.
yourself
  73:1.
.
.
< Z >.
Zoom 5:21,
  5:22, 5:25,
  66:8, 66:10,
  68:21.